**Dennis HARTUNG, John Harvey, Richard Harvey, and Michael Leach, Plaintiffs,**

v.

**CAE NEWNES, INC., Defendant.**

**No. CIV.00–1400–BR.**

United States District Court, D. Oregon.

Jan. 14, 2002.

Phillip M. Lebenbaum, Hollander, Lebenbaum & Gannicott, Portland, for Plaintiffs.

Courtney W. Wiswall, Stoel Rives, LLP, Portland, for Defendant.

## OPINION AND ORDER

BROWN, District Judge.

This matter comes before the Court on Defendant's Motion for Summary Judgment (# 17) pursuant to Fed.R.Civ.P. 56. For the reasons that follow, Defendant's Motion for Summary Judgment is DENIED.

### *PROCEDURAL BACKGROUND*

On October 13, 2000, Plaintiffs Dennis Hartung, John Harvey, Richard Harvey, Michael Leach, Charles Craig, and Rick Easley filed a Complaint alleging age and employment discrimination. Plaintiffs Hartung, Harvey brothers, and

Leach alleged the manner in which Defendant reduced its workforce and laid off Plaintiffs "had a disparate impact" on a protected class of individuals, namely employees over the age of forty, in violation of the Age Discrimination and Employment Act (ADEA), 29 U.S.C. §§ 621–34. Although the Complaint did not clearly state the basis of the claims brought by Plaintiffs Craig and Easley, these Plaintiffs apparently contended Defendant treated them differently than other similarly-situated employees because of their age.

Defendant filed a Motion for Summary Judgment as to all of Plaintiffs' claims. Defendant argued Plaintiffs failed to establish its reduction in force had a disparate impact on older employees. Although Defendant also contended Plaintiffs failed to allege a disparate treatment theory in their original Complaint and Plaintiffs, therefore, were precluded from pursuing that theory at the summary judgment stage, Defendant, nonetheless, argued in detail for ten pages of its supporting memorandum that Plaintiffs failed to establish a *prima facie* case of disparate treatment. In their written response, Plaintiffs conceded their claims based on disparate impact and argued summary judgment should be denied on the ground that Defendant treated all Plaintiffs differently than similarly-situated employees because of age. Plaintiffs contended Defendant would not be prejudiced if the Court permitted Plaintiffs to pursue this implied but unpled disparate treatment theory at this stage.

The Court heard oral argument on Defendant's Motion for Summary Judgment on November 1, 2001. During oral argument, Plaintiffs Craig and Easley conceded their claims in their entirety. Plaintiffs Hartung, Harvey brothers, and Leach made an oral motion to amend their Com-

plaint to add allegations in support of their newly-stated disparate treatment theory. In an Order issued November 2, 2001, the Court granted Plaintiffs permission to file a written motion for leave to amend their Complaint. The Court advised the parties it would address Defendant's Motion for Summary Judgment after it decided Plaintiffs' Motion for Leave to Amend the Complaint.

On November 11, 2001, Plaintiffs filed a Motion for Leave to File an Amended Complaint that alleged disparate treatment. The Court issued an Order on January 2, 2002, granting Plaintiffs' Motion, and Plaintiffs filed their Amended Complaint on January 7, 2002.

Although Plaintiffs Hartung, Harvey brothers, and Leach did not expressly raise their claims of disparate treatment until they filed their Amended Complaint, which was after Defendant's Motion for Summary Judgment was fully briefed, Defendant had actual notice that these Plaintiffs intended to pursue this theory. Plaintiffs' original Complaint alerted Defendant to the issue of disparate treatment, and the record shows Defendant pursued discovery on that theory with each of the Plaintiffs. Defendant addressed each Plaintiff's disparate treatment claim in its Motion for Summary Judgment and offered evidence specific to each Plaintiff in support of its affirmative defense that it had legitimate, nondiscriminatory reasons for firing each Plaintiff. In addition, the Court heard oral argument on Plaintiffs' disparate treatment theory alone. In its Memorandum in Opposition to Plaintiff's Motion for Leave to File Amended Complaint, Defendant acknowledges Plaintiffs "have been fully educated" as to the arguments that Defendant would make in response to Plaintiffs' disparate treatment claims set out in the proposed Amended Complaint. Because the issues raised in Plaintiffs' Amended Complaint have been briefed fully by both sides for the purpose of the summary judgment analysis and the summary judgment record is otherwise complete, the Court deems Defendant's Motion for Summary Judgment as a Motion against the allegations in the Amended Complaint.

## FACTUAL BACKGROUND

In late summer 1998, Plaintiffs were employed by Defendant at its Sherwood lumber-handling equipment manufacturing plant. An industry-wide slowdown in the fall of 1998 caused a substantial reduction in orders, and Defendant was forced to announce a general reduction in force (RIF) on November 3, 1998. The parties agree the "business necessity and ultimate goal of the RIF was to develop a versatile and efficient workforce that could keep the plant running by performing whatever tasks were necessary," and "at no point in the decision-making process was the issue of age discussed."

As part of the RIF, Plaintiffs Hartung (mechanic, age 60), John Harvey (fabricator, age 50), Richard Harvey (fabricator, age 54), and Michael Leach (welder, age 54) were laid off. All of these Plaintiffs were over the age of forty when Defendant hired them and when Defendant fired them.

The parties disagree about Defendant's reasons for dismissing Plaintiffs and the identity of the person who made those decisions. Defendant alleges Bob Atkinson, the plant manager, was the ultimate decision-maker. Atkinson allegedly made a "mental list" of employees to lay off and then "consulted" with the six team leaders in the plant to confirm his pre-conceived selections. Plaintiffs, on the other hand, contend Ken Sonners, one of the team leaders, actually made the dismissal determinations himself. Plaintiff Leach testified he stood up immediately after the list

of persons to be laid off was announced on November 3, 1998, and asked Atkinson how the decisions were made. Plaintiff Leach testified Atkinson responded that he "left the choice up" to the "lead men" and, in particular, to Ken Sonners. Plaintiffs Harvey brothers also testified they heard this exchange.

Although Plaintiffs admit Atkinson did not make any age-related comments in their presence, Plaintiffs allege Sonners made numerous derogatory, age-related comments during the course of Plaintiffs' employment. Plaintiffs maintain they heard Sonners:

1. refer to one or more of the Plaintiffs as "one of the old boys," "old guys," an "old fart," or an "old bastard";

2. explain the young guys "hustle" and wonder "why you old guys can't work like these young guys do";

3. ask Plaintiff Hartung why he was sweating and tell Plaintiff Hartung, "those young kids over there, they don't sweat like that";

4. COMPLAIN ABOUT A CO-WORKER BEING TOO SLOW AND INCAPABLE OF KEEPING UP WITH "THE YOUNG GUYS" AND SPECIFICALLY STATE THE CO-WORKER "SHOULDN'T EVEN BE IN THE COMPANY, HE'S TOO OLD";

5. express his opinion that "the younger fellows have a lot of new ideas and can get the machinery done faster"; and

6. jokingly call one of the Plaintiffs "too old and obstinate."

Defendant does not specifically deny or confirm that Sonners made these comments. Defendant alleges, however, the comments were taken out of context and, in any event, they had no bearing on the employment decisions involving Plaintiffs because Atkinson made the termination decisions on his own, Atkinson did not make any derogatory comments regarding age, and Atkinson did not discuss age during the decision-making process.

In addition, Defendant contends each Plaintiff was dismissed for legitimate, non-discriminatory reasons. Defendant states the team leaders and Atkinson reviewed several factors, including willingness and ability to perform multiple jobs, attendance, productivity, and attitude to determine which employees would be fired. In particular, Defendant alleges Plaintiff Hartung was chosen because his skills were narrow, he was unwilling to perform different tasks, and he was inflexible with regard to his work schedule. Defendant alleges Plaintiffs Harvey brothers were selected because Atkinson knew they had applied for jobs elsewhere, and he believed they each planned to leave the company in the near term. Defendant contends it laid off Plaintiff Leach because he had a negative attitude, Defendant believed he was actively seeking other employment, and his productivity was low.

All of the six employees dismissed from Plaintiffs' group of fitter/welders were in the protected class. All of the fitter/welders under age 40 were retained. The average age of workers in Plaintiffs' entire department, however, actually increased slightly from 36.02 years to approximately 38.61 years immediately after the layoffs on November 3, 1998.

The average age of workers in the department again increased to 39.83 years after the rehire was complete. In addition, the average age of workers laid off was 36.6 years, but the average age of workers rehired between December 1998 and January 2000 was only 29.5 years of age. Defendant did not rehire Plaintiffs.

## STANDARDS

Fed.R.Civ.P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving

party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Arpin v. Santa Clara Valley Transp. Agency,* 261 F.3d 912, 919 (9th Cir.2001). In response to a properly-supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. Fed.R.Civ.P. 56(e).

■ An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Guidroz–Brault v. Missouri Pacific R.R. Co.,* 254 F.3d 825, 829 (9th Cir. 2001) (internal quotation and citation omitted). All reasonable inferences from the facts in the record must be drawn in favor of the nonmoving party. *Hensley v. Northwest Permanente P.C. Retirement Plan & Trust,* 258 F.3d 986, 999 (9th Cir. 2001). A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Hawaii,* 902 F.2d 1385, 1389 (9th Cir.1990). When the nonmoving party's claims are factually implausible, that party must come forward with more persuasive evidence than otherwise would be required. *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1147 (9th Cir.1998) (citation omitted).

■ The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000). If the resolution of a factual dispute would not affect the outcome of the claim, the Court is not precluded from entering summary judgment. *Arpin,* 261 F.3d at 919.

### DISCUSSION

■ ADEA makes it "unlawful for an employer . . . to discharge any individual [who is at least forty years of age] . . . because of such individual's age." 29 U.S.C. §§ 623(a), 631(a). There are two

theories of recovery under ADEA: disparate treatment and disparate impact. *Rose v. Wells Fargo Co.,* 902 F.2d 1417, 1421 (9th Cir.1990). A disparate impact claim "challenges employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Id.* at 1423 (citations and internal quotations omitted). A disparate impact claim focuses on the consequences of employment practices rather than the employer's underlying intent. *Id.* at 1424.

On the other hand, a disparate treatment claim under ADEA focuses on the employer's motive underlying the employment decision. *Id.* at 1421. The plaintiff must show the employer treated the plaintiff differently than others similarly situated because of age. *Id.*

The burden of production on summary judgment and at trial shifts during an ADEA case as follows:

> [A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir.1985), *amended by* 784 F.2d 1407 (1986).

### Plaintiffs' Prima Facie Case

■ A plaintiff may establish a *prima facie* case of disparate treatment in one of two ways. *Wallis v. J.R. Simplot,* 26 F.3d 885, 889 (9th Cir.1994). The plaintiff may offer direct evidence of the employer's discriminatory intent. *Id.* Alternatively, the

plaintiff may establish a *prima facie* case through a presumption arising from proof of four factors:[1] the plaintiff was a member of a protected class (i.e., age forty to seventy), the plaintiff was performing his job in a satisfactory manner, the plaintiff was discharged, and the plaintiff was replaced by a substantially younger employee with equal or inferior qualifications. *Rose,* 902 F.2d at 1421.

When an ADEA claim involves a RIF, the fourth factor changes slightly, and the plaintiff instead must show "through circumstantial, statistical or direct evidence that the dismissal occurred under circumstances giving rise to an inference of age discrimination." *Id.* That inference may arise if the employer had a "continuing need" for the discharged employee's skills. *Id.* A plaintiff can show a continuing need exists if either the discharged employee's tasks continue to be performed by other employees after the dismissal or the employer treated the plaintiff differently than others similarly situated. *Id.*

The plaintiff must produce "very little" evidence to establish a *prima facie* case of disparate treatment. *Sischo–Nownejad v. Merced Community College Dist.,* 934 F.2d 1104, 1111 (9th Cir.1991). Plaintiff only has to offer proof sufficient to create an inference of unlawful discrimination. *Lowe,* 775 F.2d at 1005.

Defendant concedes Plaintiffs have established the first three *McDonnell Douglas* factors. Defendant, however, challenges Plaintiffs' evidence as to the fourth factor: that Plaintiffs were dismissed under circumstances giving rise to an inference of age discrimination. Plaintiffs, however, argue they have met their burden of production to establish a *prima facie* case of discriminatory intent because there is evidence in the record from which a reasonable factfinder:

1. could conclude Sonners was the true decision-maker,

2. could infer from Sonners's previous derogatory comments regarding age that he is prejudiced against older workers and has a preference for younger workers, and

3. could infer from Sonners's comments that his prejudice against older workers was his motive for dismissing Plaintiffs.

A genuine issue of fact exists regarding who was responsible for the RIF decisions. Defendant admits Atkinson discussed the layoffs with all of the team leaders, including Sonners. Defendant, nonetheless, asserts Atkinson alone made the termination decisions, and the team leaders' comments merely confirmed Atkinson's pre-conceived selections. Thus, Defendant admits that Sonners was involved in the RIF process to some extent and potentially could have influenced Atkinson's final decision if he recommended firing someone not on Atkinson's "mental list." Moreover, Plaintiffs have offered direct evidence that Atkinson acknowledged his delegation of the responsibility for the RIF decisions to

---

1. These factors commonly are known as the *McDonnell Douglas* factors after the United States Supreme Court case, *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *McDonnell Douglas* involved a discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* The Supreme Court has not held explicitly the *McDonnell Douglas* framework applies to ADEA actions.

The Court, however, recently applied that analysis in an ADEA case in which the parties did not dispute its applicability. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). The Ninth Circuit specifically has held the burdens of proof and persuasion in this Circuit are the same under Title VII and ADEA. *Wallis,* 26 F.3d at 888–89.

Sonners. The Court finds a reasonable juror could conclude from this evidence that Sonners made the decision to terminate Plaintiffs.

Defendant, however, contends Plaintiffs cannot withstand summary judgment because the statements attributed to Sonners do not give rise to an inference of discriminatory motive in the RIF decisions even if Sonners participated in the decision-making process or was the ultimate decision-maker. Defendant asserts many of the statements allegedly made by Sonners are "irrelevant because-even if true-they were plainly descriptive in nature" and the remaining statements constitute nothing more than "stray remarks." Defendant further contends the statements at issue are general statements unrelated to the termination decisions or to Plaintiffs' abilities.

The Ninth Circuit has held a "stray remark" that is "uttered in an ambivalent manner and [is] not tied directly to [the plaintiff]'s termination is insufficient to create an inference of discriminatory motive." *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1438–39 (9th Cir.1990). *See also Nesbit v. Pepsico, Inc.,* 994 F.2d 703, 705 (9th Cir.1993). Applying this test, the Ninth Circuit held a plaintiff failed to create an inference of discrimination through proof of a corporate officer's statement to the plaintiff that "we don't necessarily like grey hair." *Nesbit,* 994 F.2d at 705. The comment was a mere stray remark incapable of creating an inference of discrimination without additional proof because it was an isolated comment that was made by a person with no connection to the employment decision or to the plaintiff. *Id.* The court similarly held a decision-maker's single reference to older employees as "old timers" was insufficient evidence to establish discriminatory motive at the summary judgment stage. *Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 918–19 (9th

Cir.1996), *cert. denied,* 522 U.S. 950, 118 S.Ct. 369, 139 L.Ed.2d 287 (1997).

As Defendant points out, the remarks at issue here do not specifically address hiring or firing in general or refer directly to any of the Plaintiffs or to this particular RIF. The Ninth Circuit, however, has recognized a nexus to the particular employment decision is not always required. In *Chuang v. Univ. of Cal. Davis, Bd. of Trs.,* the Ninth Circuit held there was adequate evidence of discriminatory intent on the part of a decision-maker when the decision-maker laughed after a co-worker remarked that "two Chinks" in the department were more than enough even though the remark referred to someone other than the plaintiff and did not pertain to the particular employment decision at issue. 225 F.3d 1115, 1127 (9th Cir.2000). In *Cordova v. State Farm Ins. Cos.,* the Ninth Circuit similarly held a decision-maker's alleged comments that a co-worker was a "dumb Mexican" and that he was hired because he was a minority were strong evidence of discriminatory animus on the basis of national origin even though the remarks were not about the plaintiff or the decision as to whether to promote her. 124 F.3d 1145, 1149 (9th Cir.1997).

In both of these cases, the court held the egregious comments constituted direct evidence of a discriminatory motive underlying the employment decision. Although the comments at issue in this matter may not rise to the same level of egregiousness, the courts also have found far less shocking comments to be direct evidence of discriminatory motive. For example, the court held a decision-maker's alleged statement that "he did not want to deal with another female" directly suggested the existence of bias. *Godwin v. Hunt & Wesson, Inc.,* 150 F.3d 1217, 1221 (9th Cir. 1998).

Plaintiffs here allege Sonners made numerous statements that, when read together, show an age-related prejudice. The statements at issue were not "stray" in the sense that they were not single remarks. Some of the alleged comments, if viewed in a vacuum, might be perceived as merely descriptive in nature as opposed to derogatory. For example, standing alone the allegation that Sonners referred to one of the Plaintiffs as an "old guy" or "one of the old boys" might not support an inference that Sonners would fire Plaintiffs on the basis of their age if given the opportunity. Sonners's alleged statements that an older employee sweats more or sits down more often than the younger employees also might be seen as merely descriptive if viewed in isolation. These statements, however, must be viewed together and in conjunction with the other, more disturbing statements attributed to Sonners. In particular, Sonners's alleged statements that Plaintiffs' co-employee was "too old" to work for the company and that younger workers have new ideas and work faster than older ones are direct evidence of Sonners's preference for younger workers in the workplace. At the very least, Sonners's derogatory comments about older workers and express preference for younger workers constitute evidence from which a reasonable juror could infer a discriminatory bias and an improper motive for the RIF decisions designed to achieve a "versatile and efficient work force."

In addition, Plaintiffs offer statistical proof to bolster their contentions. The average age of workers laid off in November was 36.6 years, while the average age of workers rehired during the following fifteen months was only 29.5 years. In addition, one hundred percent of the workers laid off in Plaintiffs' job category were members of the protected class. All of the employees in the group under forty were retained. While Plaintiffs' statistical evidence may not be definitive, it is further evidence from which a reasonable juror could infer a discriminatory motive for the RIF decisions.

Based upon the record as a whole, Plaintiffs have met their very light burden and have established a *prima facie* case of discrimination.

### Defendant's Rebuttal of the Presumption of Discrimination

After the employee meets his burden to establish a *prima facie* case, a presumption of discrimination is created and the burden of production shifts to the defendant employer to show a "legitimate, nondiscriminatory" reason for the decision. *Wallis*, 26 F.3d at 889. If the defendant meets this burden, the presumption of discrimination disappears. *Id.*

Defendant argues the fact that all four Plaintiffs were over age forty and members of the protected class when Defendant hired them relieves Defendant of its obligation to articulate legitimate, nondiscriminatory reasons for Plaintiffs' terminations. The Ninth Circuit has recognized a "strong inference" of no discrimination when the same person is responsible for the hiring and firing of an employee and both acts occurred within a relatively short time and with the decision-maker's knowledge of the protected classification. *Bradley v. Harcourt*, 104 F.3d 267, 270–71 (9th Cir.1996). This principle is of little help to Defendant, however, as only one of these Plaintiffs, John Harvey, was hired by Sonners.

Defendant also offers several alternative reasons for terminating Plaintiffs during the RIF, including Plaintiff Hartung's alleged inflexibility, Plaintiff Leach's alleged low productivity and negative attitude, and Plaintiffs Harvey brothers' alleged plan to leave the company to pursue other careers.

Defendant's proffered reasons for terminating Plaintiffs constitute legitimate, nondiscriminatory reasons for choosing to lay off these Plaintiffs.

### Plaintiffs' Evidence of Pretext

After a defendant employer articulates legitimate, nondiscriminatory reasons for its employment decision, the burden of production again shifts to the plaintiff to show the defendant's proffered reasons are merely pretext. *Id.* Summary judgment is improper when a plaintiff produces sufficient evidence to allow a reasonable factfinder to conclude either: the true reason for the discharge was a discriminatory one or the alleged reason for the discharge was false. *Nidds*, 113 F.3d at 912 (citing *Warren v. City of Carlsbad*, 58 F.3d 439, 443 (9th Cir.1995)).[2]

■ If the plaintiff offers direct evidence of discriminatory motive, plaintiff need offer "very little" evidence of discrimination. *Godwin*, 150 F.3d at 1221 (citing *Lindahl v. Air France*, 930 F.2d 1434, 1438 (9th Cir.1991)). If the plaintiff chooses to establish pretext through circumstantial evidence that the defendant's proferred reasons were not the defendant's actual motives, such evidence must be "specific and substantial." *Godwin*, 150 F.3d at 1222. When, however, the evidence introduced by the plaintiff to establish a *prima facie* case consists of "more" than the evidence necessary to create a presumption of discrimination under the *McDonnell Douglas* factors, the plaintiff does not necessarily need to offer any additional independent evidence of discrimination to rebut the legitimate, nondiscriminatory reasons offered by the defen-

dant. *Chuang*, 225 F.3d at 1127. The ultimate question is whether Plaintiffs have produced enough evidence to allow a reasonable factfinder to conclude the true reason for the discharge was a discriminatory one. *Nidds*, 113 F.3d at 918 n. 2.

■ Plaintiffs argue they do not need to produce any additional evidence to rebut Defendant's proffered legitimate, nondiscriminatory reasons because "the reasons given by Mr. Atkinson for Plaintiffs' dismissals are not applicable here since plaintiffs have shown that Mr. Atkinson abdicated the termination decisions to Ken Sonners." Plaintiffs contend only Sonners may offer legitimate, nondiscriminatory reasons for the company's decision to fire Plaintiffs. Plaintiffs, however, offer no authority to support this proposition, and the Court has found none.

The Ninth Circuit consistently has held an ADEA plaintiff may not withstand summary judgment by relying on a *prima facie* presumption of discrimination after the defendant employer has "*merely articulate[d]* a legitimate, nondiscriminatory reason for dismissal." *Nidds*, 113 F.3d at 917 (emphasis added). Although the fact that someone other than the decision-maker articulated the reason for Defendant's conduct could be evidence at trial that Defendant's proffered reason was mere pretext, Plaintiffs are not relieved from their burden to show some evidence of pretext in order to withstand summary judgment.

Plaintiffs, however, offered "more" than a presumptive case under the *McDonnell Douglas* factors when they established their *prima facie* case and, therefore, are

---

2. While the plaintiff must prove at trial both the employer's proffered reason for discharge was false and the real reason for the dismissal was discriminatory, proof of either element at the summary judgment stage is sufficient because a factfinder could reasonably infer a discriminatory motive from the fact that the employer created a false reason for dismissal. *Nidds*, 113 F.3d at 918 n. 2 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

not required to produce any additional evidence to rebut Defendant's proffered reasons. As noted, Sonners's statements as a whole, and in particular his comment that a co-worker was "too old" to work at the company, are direct evidence of his discriminatory animus against older workers. Plaintiffs' statistical evidence also tends to show different treatment for those in the protected class. The Court finds a reasonable factfinder could conclude from the evidence in the record that Sonners's age bias was the true reason for Defendant's dismissal of Plaintiffs. Because Plaintiffs have offered "more" than a *prima facie* case relying on the *McDonnell Douglas* presumption of discrimination, Plaintiffs need not offer any additional proof of pretext to survive summary judgment.

## CONCLUSION

For the reasons above, Defendant's Motion for Summary Judgment (# 17) is **DENIED.**

IT IS SO ORDERED.