Goodman

**This Opinion is a Precedent of the TTAB**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
P.O. Box 1451
Alexandria, VA 22313-1451

Mailed: January 29, 2015

Cancellation No. 92056067 (Parent)
Cancellation No. 92056080

Ava Ruha Corporation dba Mother's Market & Kitchen

v.

Mother's Nutritional Center, Inc.

**Before Taylor, Wellington & Ritchie, Administrative Trademark Judges.**

**By the Board:**

Mother's Nutritional Center Inc. (hereinafter "Respondent") owns

Registration No. 3675027 for the mark and

Registration No. 3675056 for the standard character mark MOTHER'S NUTRITIONAL CENTER[1] for "Retail grocery stores that exclusively feature foods authorized for purchase by pregnant women, new mothers and young children participating in the federal Supplemental Food Program for Women, Infants and Children (WIC)" in International Class 35.

---

[1] Both marks were published for opposition on June 16, 2009 and both registrations issued on September 1, 2009. "Nutritional Center" is disclaimed for Registration No. 3675056.

On August 21, 2012, Petitioner Ava Ruha Corporation d/b/a Mother's Market & Kitchen (hereinafter "Petitioner") filed petitions to cancel Respondent's registrations on the grounds of likelihood of confusion, fraud and dilution. Petitioner has pleaded ownership of Registration No. 1440871



for the mark                                              for "Restaurant and grocery services directed toward natural and health products and food preparations" in International Class 42.[2]

In its answer, Respondent denies the salient allegations in the consolidated petition to cancel and has asserted affirmative defenses.[3]

This case now comes up on the following motions[4]:

1) Respondent's motion for summary judgment on the affirmative defense of laches;

2) Petitioner's motion to file a second amended petition for cancellation[5];

---

[2] Issued May 26, 1987.  Effective January 1, 2002, applications for food and beverage services were placed in new International Class 43.

[3] The proceedings were consolidated on February 14, 2013 and Cancellation No. 92056067 was designated as the parent case.  A consolidated amended petition to cancel was filed on February 25, 2013, and Respondent filed its answer on March 25, 2013.

[4]  Respondent's counsel's notice of name change, filed November 12, 2013, is noted.

[5] The motion to amend was filed prior to suspension of proceedings for consideration of the summary judgment motions.

3) Petitioner's cross-motion for summary judgment on Respondent's affirmative defense of laches;

4) Petitioner's motion for Fed. R. Civ. P. 56(d) discovery;

5) Petitioner's evidentiary objections to Respondent's declaration of Juan-Carlos Monnaco; and

6) Respondent's evidentiary objections to Petitioner's declaration of Deborah Rubino.

Petitioner's Motion to Amend

We turn first to the motion for leave to file a second amended petition for cancellation to plead ownership of Registration No. 4351038 for the standard character mark MOTHER'S MARKET & KITCHEN for "Retail grocery store services featuring health food products" in International Class 35 and "Restaurant services featuring natural and healthy food preparations, namely, vegetarian, gluten-free, organic, vegan, low carbohydrate, low salt, raw, dairy free, poultry, fish, and low glycemic foods and beverages" in International Class 43.[6]  Inasmuch as Respondent has not filed a response thereto, the motion to amend the petition to cancel is granted as conceded. Trademark Rule 2.127(a).

The second amended petition to cancel is accepted and is now the operative pleading in this consolidated case.

Cross-Motions for Summary Judgment on Respondent's Laches Defense

As noted, the parties have cross-moved for summary judgment on Respondent's laches defense.  Before dealing with the merits, we first address some preliminary matters.

---

[6] Issued June 11, 2013.

*The Operative Complaint is the Second Amended Petition*

Although Respondent's motion for summary judgment was filed prior to the second amended petition, the Board deems the motion to refer to the allegations in the second amended petition to cancel. *Hartung v. Cae Newnes, Inc.*, 229 F. Supp. 2d 1093, 1096 (D. Or. 2002) (deeming motion for summary judgment as a motion against allegations in the amended complaint when the amended complaint was filed after defendant's motion for summary judgment).

*Petitioner's Fed. R. Civ. P. 56(d) Discovery Request is Moot*

Along with its opposition to the motion for summary judgment, Petitioner filed a motion for Fed. R. Civ. P. 56(d) discovery. Inasmuch as Petitioner has filed a substantive response to Respondent's motion for summary judgment, the motion for Rule 56(d) discovery is denied as moot. *See Ron Cauldwell Jewelry, Inc. v. Clothestime Clothes, Inc.*, 63 USPQ2d 2009, 2012 n.8 (TTAB 2002) (denying motion for Rule 56(f) (now Rule 56(d))[7] discovery where responsive brief on merits to summary judgment filed).

*The Parties' Evidentiary Objections*

Petitioner has interposed objections to Respondent's declaration of Juan-Carlos Monnaco, its Chief Financial Officer, (hereinafter "Monnaco declaration") submitted in support of Respondent's motion for summary judgment. In particular, Petitioner argues that Mr. Monnaco lacks the

---

[7] Effective December 1, 2010, Rule 56(f) was reclassified as Rule 56(d) with no substantial change.

requisite personal knowledge under Fed. R. Evid. 602 with regard to the statements made in the declaration, and his testimony is incompetent and inadmissible as there is no evidence indicating when he became associated with Respondent, what his responsibilities were at different points and time, and the functional basis for his knowledge.[8]

In response, Respondent argues that Petitioner's objections should be overruled as Mr. Monnaco is an officer and competent to testify on Respondent's behalf.

Affidavits or declarations may be submitted in support of, or in opposition to, a motion for summary judgment provided that they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Pursuant to the rule, an affiant or declarant may testify based on his or her personal knowledge from a review of the contents of files and records. *Londrigan v. Federal Bureau of Investigation*, 670 F.2d 1164, 1174-75 (D.C. Cir. 1981); *Washington Cent. R. Co., Inc. v. National Mediation Bd.*, 830 F. Supp. 1343, 1353 (E.D. Wash. 1993) (same). In addition, an affidavit or declaration can adequately support a motion for summary judgment when the affiant or declarant's position with the employer renders him or her competent to provide the testimony on the particular issues which the affidavit concerns. *See, e.g.*, *In re DBC*, 545 F.3d 1373, 89 USPQ2d 1123,

---

[8] The Federal Rules of Evidence and the Federal Rules of Civil Procedure generally apply to proceedings before the Trademark Trial and Appeal Board. Trademark Rules 2.116 and 2.122.

1131 (Fed. Cir. 2008) (officer and employee declarations may be based on discussions concerning the subject matter with other knowledgeable officers, employees, or contractors); *Sheet Metal Workers' Int'l. Assoc. Local Union v. Madison Indus., Inc.*, 84 F.3d 1186, (9th Cir. 1996) (personal knowledge of party's general manager could be inferred from his position within the company). To the extent some portions of the declaration may not be based on personal knowledge, the proper remedy is to simply disregard those portions. *Ridenour v. Collins*, 692 F. Supp. 2d 827, 846 (S.D. Ohio 2010).

In this case, Mr. Monnaco's declaration states he is Respondent's Chief Financial Officer and is testifying based on his personal knowledge and review of company files on the relevant matters. Because Mr. Monnaco is competent to testify, based on his status as Respondent's Chief Financial Officer, his personal knowledge, and his personal knowledge of the records, Petitioner's objections based on lack of personal knowledge under Fed. R. Evid. 602 are overruled.

We also overrule Petitioner's hearsay objections. Petitioner has objected to Mr. Monnaco's statements regarding the receipt and sending of letters between the parties' counsel. However this testimony does not constitute hearsay as it does not go to the factual content of the letters but as to their sending and receipt.[9] *Pfizer Inc. v. Cody John Cosmetics, Inc.* 211 USPQ 64 (TTAB 1981) (letters are not hearsay in the first instance of corroborating

---

[9] We note that these letters are also exhibits to the declaration of Deborah Rubino, Petitioner's secretary, provided by Petitioner in opposition to Respondent's summary judgment motion and in support of its cross-motion for summary judgment.

testimony of receipt of the letters and the address of those letters). To the extent any other objected to statement constitutes inadmissible hearsay that is not subject to a hearsay exception, it has not been considered.

Petitioner has further argued that to the extent the statements in the Monnaco declaration are admissible, their prejudicial effect outweighs their probative value under Fed. R. Evid. 403.

However, we need not exclude evidence for danger of unfair prejudice. *See e.g., Woods v. United States,* 200 F. App'x 848, 853 (11th Cir. 2006) ("the part of Rule 403 that authorizes exclusion of evidence because of its unfair prejudicial impact 'has no logical relationship to bench trials . . . .'") quoting *Gulf States Utilities Co. v. Ecodyne Corp.,* 635 F.2d 517, 519 (5th Cir. 1981). This is so because "Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. . . . [as well as] exclude those improper inferences from his mind in reaching a decision." *Gulf States Utilities,* 635 F.2d at 519.

Accordingly, Petitioner's objection based on Fed. R. Evid. 403 is overruled.

In view of the above, we have considered the Monnaco declaration in connection with Respondent's motion for summary judgment.

Respondent has interposed evidentiary objections to portions of statements in the declaration of Deborah Rubino, Petitioner's secretary. Respondent also has interposed hearsay objections. For the most part,

Respondent's objections are essentially arguments regarding the probative value of the objected-to statements, and not objections as to admissibility. *Weatherford/Lamb, Inc. v. C&J Energy Servs., Inc.*, 96 USPQ2d 1834, 1836-37 (TTAB 2010). We overrule the objections but have considered whether Ms. Rubino's statements are sufficiently probative to raise a genuine dispute of material fact or support judgment in Petitioner's favor. To the extent any objected to statements constitute inadmissible hearsay that is not subject to a hearsay exception, they have not been considered.

*The Merits of Respondent's Laches Defense*

We now consider the merits of the parties' cross-motions for summary judgment on the affirmative defense of laches.[10]

Summary judgment is an appropriate method of disposing of cases in which there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, the evidentiary record and all reasonable inferences to be drawn from the undisputed facts must be viewed in the light most favorable to the nonmoving party. *Olde Tyme Foods Inc. v. Roundy's Inc.*, 961 F.2d 200, 22 USPQ2d 1542, 1544 (Fed. Cir. 1992). The Board may not resolve issues of material fact; it may only ascertain whether such issues are present. *See Lloyd's Food Prods. Inc. v. Eli's Inc.*, 987 F.2d 766, 25 USPQ2d 2027 (Fed. Cir. 1993). When cross-motions for summary

---

[10] Although styled as an opposition and cross-motion, Petitioner's cross-motion is essentially a request for judicial determination as non-movant that it is entitled to judgment in its favor.

judgment are presented, the Board evaluates each motion on its own merits and resolves all doubts and inferences against the party whose motion is being considered. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390–91 (Fed. Cir. 1987)). To defeat summary judgment, the evidence must be sufficiently probative to create a genuine dispute of material fact to be tried. *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 77 USPQ2d 1161, 1177 (Fed. Cir. 2005).

We first note that the laches defense is an available defense for likelihood of confusion and dilution claims.[11] 15 U.S.C. § 1069; *National Cable Tel. Ass'n, Inc. v. American Cinema Editors, Inc.*, 937 F.2d 1572, 19 USPQ2d 1424, 1431 (Fed. Cir. 1991); *Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1419 (TTAB 2008). However, the laches defense is not available for fraud claims because it is in the public interest to prohibit registrations procured or maintained by fraud. *Hornby*, 87 USPQ2d at 1419; *see also La Republique Francaise v. Saratoga Vichy Spring Co.*, 191 U.S. 427, 439 (1903) (laches unavailable in the case of actual fraud or in case where there is a conscious attempt to mislead the public as to sponsorship). Therefore, we do not consider the motion in regard to the fraud claim.

The party raising the affirmative defense of laches has the burden of proof. *Bridgestone/Firestone Research Inc. v. Automobile Club de l'Ouest de la France*, 245 F.3d 1359, 58 USPQ2d 1460, 1462 (Fed. Cir. 2001). In order to

---

[11] By statute, laches is available as an affirmative defense. Section 19 of the Lanham Act, 15 U.S.C. § 1069.

prevail on the affirmative defense of laches, Respondent is required "to establish that there was undue or unreasonable delay [by petitioner] in asserting its rights, and prejudice to [respondent] resulting from the delay." *Id.* at 1462-63; *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes Inc.*, 971 F.2d 732, 23 USPQ2d 1701, 1703 (Fed. Cir. 1992). The two foundational inquiries of undue or unreasonable delay and prejudice are questions of fact. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 112 USPQ2d 1198, 1202 (Fed. Cir. 2014). Respondent must establish that there is no genuine dispute of material fact as to either element. *Fishking Processors Inc. v. Fisher King Seafoods Ltd.*, 83 USPQ2d 1762, 1765 (TTAB 2007) (citing *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 34 USPQ2d 1822, 1824 (Fed. Cir. 1995)). On the other hand, Petitioner, as plaintiff cross-moving for summary judgment on Respondent's affirmative defense, may point to an absence of evidence in the record to support an essential element of the defense. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). We will determine first, if Respondent has sufficiently established the existence of each element of its asserted defense or if any genuine disputes of material fact exist as to each element of the defense; and, if the facts are undisputed, whether Petitioner is entitled to summary judgment in its favor or whether Respondent is entitled to summary judgment in its favor.

*Was There an Unreasonable Delay?*

We turn first to a calculation of the length of delay between the time when a petitioner first has notice of a defendant and its mark and the time when petitioner files the petition for cancellation. A petitioner must be shown to have had actual knowledge or constructive notice of a registrant's trademark use to establish a date of notice from which delay can be measured. *Loma Linda Food Co. v. Thomson & Taylor Spice Co.*, 279 F.2d 522, 126 USPQ 261, 263 (CCPA 1960); *Jansen Enters. Inc. v. Rind*, 85 USPQ2d 1104, 1114 (TTAB 2007); *Teledyne Tech., Inc. v. Western Skyways, Inc.*, 78 USPQ2d 1203, 1210 (TTAB), *aff'd*, 208 F. App'x 886 (Fed. Cir. Dec. 6, 2006). "In the absence of actual knowledge [of trademark use] prior to the close of the opposition period, the date of registration is the operative date for laches," as it provides constructive notice to petitioner of the registrant's claim of ownership. *Teledyne,* 78 USPQ2d at 1210, n.10 and the authorities cited therein; *see also Jansen Enterprises*, 85 USPQ2d at 1114 (publication in *Official Gazette* does not provide constructive notice). If there is actual knowledge of a defendant and its mark prior to publication for opposition, the date of publication is the operative date for laches. *National Cable Tel. Ass'n*, 19 USPQ2d at 1432 ("in this case laches, with respect to protesting the issuance of the registration for the mark, could not possibly start to run prior to October 16, 1984, when Cable's application for registration was published for opposition"). Thus, in a cancellation proceeding, laches begins to run no earlier than the date the

involved mark was published for opposition (if there was actual knowledge), and no later than the issue date of the registration (when Plaintiff is put on constructive notice, *see* 15 U.S.C. § 1072).

In this case, the petitions for cancellation were filed on August 21, 2012. The earliest dates for determining whether there has been undue delay are the June 16, 2009, publication date for both of Respondent's registrations (when based on prior actual knowledge of trademark use) and the September 1, 2009, issue date for both registrations (when there is no prior actual knowledge of trademark use). It is not subject to genuine dispute that Petitioner had actual knowledge of Respondent's trademark use at least as early as February 5, 1998.[12] There is also no genuine dispute of material fact that Petitioner's actual knowledge of Respondent's marks precedes the publication dates of the applications which resulted in both of Respondent's registrations.

Although Petitioner argues that laches runs from the date of registration, in view of Petitioner's actual notice of Respondent's trademark use prior to the close of the opposition period, we find as a matter of law that laches runs

---

[12] The Rubino declaration states that Petitioner became aware of Respondent's use of Mother's Nutritional Center "[i]n early 1998" and "concluded that Respondent's use of the name 'Mother's Nutritional Center' might create a likelihood of confusion in the marketplace with Petitioner's Mother's Market & Kitchen registered service mark . . . ." Rubino Decl. ¶ 4, 17 TTABVUE at 28. The record includes a February 5, 1998 letter from Petitioner's counsel to Respondent, which states that his client became aware of Respondent's use and requested "written assurance" that Respondent "cease all use of Mother's." It appears that based on the petition for cancellation, Petitioner's broad objections to Respondent's services in connection with the use of the term Mother's has not changed. Rubino Decl. Exhibit A, 17 TTABVUE at 34.

from the date the applications for the subject registrations were published for opposition, June 16, 2009. Therefore, based on the August 21, 2012, commencement date of the cancellation actions, it is not subject to genuine dispute that the length of delay is a little over three years and two months. Although this delay is not extreme, time periods shorter than, or only slightly longer than this, have supported a laches defense. *See, e.g., Teledyne,* 78 USPQ2d at 1203 (3 years, 8 months of unexplained delay held sufficient for laches); *Trans Union Corp. v. Trans Leasing Int'l, Inc.*, 200 USPQ 748, 756 (TTAB 1978) (finding laches based on a two and half year period of delay).

Having concluded that the length of the delay could support a defense of laches, we now determine whether the delay was undue or unreasonable. Here, Petitioner argues there are genuine disputes of material fact as to whether its delay was justified and not "undue," or alternatively, that summary judgment should be found in its favor because as a matter of law, the delay was reasonable or excusable.

In particular, Petitioner argues the doctrine of progressive encroachment, namely, that it had no reason to seek cancellation until after Respondent redirected its business so that it more squarely competed with Petitioner. Petitioner points to one instance of actual confusion arising as a result of Respondent's use of MOTHER'S on grocery store services; Petitioner's lack of knowledge, until 2011, of Respondent's use of the MOTHER'S NUTRITIONAL CENTER or MOTHER'S marks on more than one store

location;[13] Respondent's "promotion of healthy and nutritional food products [including organic food products] which are a focus of grocery services offered under Petitioner's marks," as evidencing a "change in focus of Respondent's services"; and Respondent's "admission of likelihood of confusion between a highly similar mark to Petitioner's and Respondent's mark" in third party litigation as a reversal of Respondent's "position regarding the issue of likelihood of confusion." Pet. Br. p.11-12, 17 TTABVUE at 15-17; Rubino Decl. ¶¶ 11, 10, 13, 17 TTABVUE at 28, 30-31.

In response and reply, Respondent argues that its business remains grocery stores that, as identified in the subject registrations, exclusively offer for sale food identified on the authorized WIC food list. Respondent points to the Monnaco declaration which states that "Respondent has continuously used its MOTHER'S and MOTHER'S NUTRITIONAL CENTER ("Respondent's Marks"') for its chain of retail grocery stores focused on the federal supplemental Food Program for Women, Infants and Children (WIC) since 1995." Monnaco Decl. ¶ 2, 14 TTABVUE at 9.

---

[13] In connection with its argument of progressive encroachment, Petitioner points to Respondent's use in commerce dates asserted in the involved registrations as "noteworthy" and evidencing "an absence of significant use (if any)" of Respondent's marks so as to excuse Petitioner's delay in filing the petitions for cancellation. Pet. Br. p. 11, 17 TTABVUE at 16. However, dates of use in a registration are not evidence of use, Trademark Rule 2.122(b)(2), and, in any event, the unchallenged Monnaco declaration declares that Respondent operated 13 stores under the MOTHER'S and MOTHER'S NUTRITIONAL CENTER marks in 1998 and had expanded to 55 stores by July 2009. Monnaco Decl. ¶¶ 7-8, 14 TTABVUE at 9-10.

The doctrine of progressive encroachment "focuses the court's attention on the question of whether the defendant, after beginning its use of the mark, redirected its business so that it more squarely competed with plaintiff and thereby increased the likelihood of public confusion of the marks." *Jansen Enterprises*, 85 USPQ2d at 1116 (quoting *ProFitness Physical Therapy Center v. Pro-Fit Orthopedic and Sports Physical Therapy P.C.*, 314 F.3d 62, 65 USPQ2d 1195, 1199-1200 (2d Cir. 2002)). For example, "where a defendant begins use of a trademark or trade dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." *Chattanoga Mfg., Inc. v. Nike Inc.*, 301 F.3d 789, 64 USPQ2d 1140, 1143 (7th Cir. 2002) .

Respondent has identified its services in its registration as "Retail grocery stores that exclusively feature foods authorized for purchase by pregnant women, new mothers and young children participating in the federal Supplemental Food Program for Women, Infants and Children (WIC)." This recitation of services clearly indicates that the services cover a specific type of grocery services directed to specific consumers, namely those participating in the federal WIC program.

Petitioner did not submit any evidence in its response and cross-motion to suggest that Respondent was ever "put on notice" by Petitioner as to any possible encroachment upon Petitioner's business. Petitioner's evidence of Respondent's encroachment is a printout of certain webpages from

Respondent's website which shows that Respondent provides "locally grown fresh produce that is in season," offers "a wide selection of the best quality fresh produce," now carries organic baby food, and provides "Great tasting and refreshing recipes for a Healthy Family." Rubino Decl., ¶13 exhibit E, 17 TTABVUE at 31, 57-60. However, this evidence is not sufficiently probative of a change in the nature of Respondent's services such that Respondent has expanded into retail grocery store services not connected exclusively with the federally funded WIC program or that Respondent is marketing its retail grocery store services to non-WIC program participants. Registration provides constructive nationwide notice of the Respondent's claim of ownership of the marks in connection with the services specified in the registration certificates, *see* 15 U.S.C. §§ 1057(b) and 1072, and the types of foods Petitioner points to as evidence of progressive encroachment are subsumed within the description of the retail store services in the Registrations. For purposes of an attack on a registration, there can be no "progressive encroachment" where the alleged encroachment is within the scope of the registration at issue.

As further evidence of encroachment, Petitioner has also provided Respondent's October 28, 2011, complaint against a third party for trademark infringement, common law trademark, trade name infringement and unfair trade practices.[14] The complaint states in paragraphs 7 and 8

---

[14] *Mother's Nutritional Center v. Mother Market*, Case no. CV11-9030, United States District Court, Central District of California, Southern Division.

16

that Respondent's "grocery stores sell groceries exclusively as part of the federally funded Special Supplemental Program for Women, Infants and Children ("WIC")" and that "[t]he WIC program is a federally funded program, similar to the food stamp program . . . . Qualified participants may obtain vouchers which can be redeemed for specific food items at licensed and designated WIC vendors such as MNC." Rubino Decl., ¶ 11, Exhibit C, 17 TTABVUE at 30-31, 38-49. The allegations, too, are consistent with the description of Respondent's services set forth in Respondent's registrations. The complaint does not include any allegations which state that Respondent is providing services other than grocery services in connection with the federally funded WIC program, nor has Petitioner pointed to any such allegations, much less evidence.

To bolster its progressive encroachment argument, Petitioner offered what it characterized as an instance of actual confusion, namely, an e-mail from an unnamed customer which was sent via the "contact us" portion of Petitioner's website. We think that one anonymous e-mail is far too weak a reed to support Petitioner's progressive encroachment argument. *Porta-Tool, Incorporated v. DND Corporation*, 196 USPQ 643, 649 (TTAB 1977) (with respect to evidence of actual confusion, anonymous letter is not entitled to much weight). On the record before us, we hold that the evidence provided by Petitioner in its response and cross-motion is not sufficiently probative to

raise a genuine dispute of fact as to whether progressive encroachment excused what would otherwise be an unreasonable delay.[15]

*Economic Prejudice*

Respondent argues that it suffered prejudice as a result of the delay asserting that it "expended tens of millions of dollars growing its business," investing in stores and "steadily built up goodwill in Respondent's marks." Resp. Br. p.2, 14 TTAVUE at 3. In particular, Respondent states that it added at least 15 stores and spent over $7 million on promoting "Respondent's Marks and its services offered thereunder" since the publication date for the involved registrations through the end of 2012. Resp. Br. p.4, 14 TTABVUE at 5; Monnaco Decl. ¶¶ 8-10, 14 TTABVUE at 10.

Petitioner, on the other hand, argues genuine disputes exist as to whether any prejudice was due to Petitioner's delay, or alternatively, the undisputed facts establish that there was no prejudice due to Petitioner's delay.

With regard to the question of prejudice, a respondent's reliance on a petitioner's failure to file a petition for cancellation sooner is not a requirement for laches. That is, a petitioner does not have to overtly or covertly lull a respondent into believing that petitioner would not act. *Bridgestone/Firestone Research*, 58 USPQ2d at 1463 (citing *A.C. Aukerman*

---

[15] We note that progressive encroachment, which occurs when one party comes more closely into competition with another, such that confusion from similar marks is rendered more likely, would not seem applicable to excuse a tardy claim of dilution. That is because the presence of competition between the parties is irrelevant to a claim of dilution, as defined in 15 U.S.C. § 1125(c). But we need not definitively so hold here because, as discussed *infra*, we find, as a matter of law, that Petitioner has failed to offer sufficient facts to support a progressive encroachment excuse.

*Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 22 USPQ2d 1321, 1336 (Fed. Cir. 1992) (*en banc*) ["reliance is not a requirement of laches"]). "Economic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weight to the evidence of prejudice." *Teledyne*, 78 USPQ2d at 1211. *See also Turner v. Hops Grill & Bar Inc.*, 52 USPQ2d 1310, 1313 (TTAB 1999) ("Prejudice is generally shown by the fact that in reliance on petitioner's silence, respondent built up a valuable business and goodwill around the mark during the time petitioner never objected"); *Trans Union*, 200 USPQ at 756 (prejudice occurs where senior user takes action after the junior user builds up its business and goodwill around a mark).

It is not subject to genuine dispute that from June 16, 2009, through August 21, 2012, Respondent continued to use, invest in, and promote its MOTHER'S and MOTHER'S NUTRITIONAL CENTER marks and expanded its business by adding fifteen additional stores and spending $7.5 million on advertising and promotions.

We are not persuaded by Petitioner's arguments that a genuine dispute exists as to whether the prejudice was "due to, the result of, or caused by Petitioner's 'delay'" or that no prejudice can be found as there is "no nexus between Respondent's opening of stores, marketing expenditures and Petitioners' 'delay.'" Pet. Br. p.12, 17 TTABVUE at 20. Reliance by Respondent on Petitioner's delay is not necessary to find economic prejudice.

*Bridgestone/Firestone Research*, 58 USPQ2d at 1463 ("When there has been an unreasonable period of delay by a plaintiff, economic prejudice to the defendant may ensue whether or not the plaintiff overtly lulled the defendant into believing that the plaintiff would not act, or whether or not the defendant believed that the plaintiff would have grounds for action."). The question is whether there has been "a change in the economic position . . . during the period of delay." *Aukerman*, 22 USPQ2d at 1329. "Economic damage may be a direct function of the delay involved." *Teledyne*, 78 USPQ2d at 1212. Here, it is undisputed that Respondent changed its economic position during the period of Petitioner's delay by Respondent's continued use, promotion, and development of its MOTHER'S and MOTHER'S NUTRITIONAL CENTER trademarks. Therefore, we find as a matter of law that Respondent would be subject to economic prejudice if its registrations were to be cancelled at this point in time.

We hold that, as a matter of law, Petitioner's delay was unreasonable and prejudiced Respondent. Accordingly, laches has been shown.

*Dilution and Laches*

Laches may apply to claims of dilution in opposition and cancellation proceedings. *See* 15 U.S.C. § 1069. *Cf. Pharmacia Corp. v. Alcon Labs., Inc.* 201 F. Supp. 2d 335, 381 n.17 (D.N.J. 2002) ("Dilution does not implicate any public interest against consumer deception because, by definition, it protects only a trademark owner's private interest."); *TCPIP Holding Co. v. Haar*

*Communications Inc.*, 244 F.3d 88, 95 (2d Cir. 2001) ("The Dilution Act offers no benefit to the consumer public—only to the owner"); *Hornby*, 87 USPQ2d at 1419 ("the claim of dilution relates to a personal right of petitioner, rather than being in the interest of the general public"). *See also* 4 *J. Thomas McCarthy on Trademarks and Unfair Competition*, § 24:130 (4th ed. 2014) ("Unlike cases of traditional trademark infringement, in dilution cases there is no strong policy of consumer confusion to weigh against dismissal or narrowing of relief due to the equities created by delay or acquiescence").

Inasmuch as the affirmative defense of laches is applicable to the dilution claim, and we have found that Respondent has established a valid laches defense, Petitioner's dilution claim is barred by this equitable defense.

*Likelihood of confusion and laches*

Even when a laches defense has been proven, it will not serve as a bar against a petition for cancellation on a likelihood of confusion ground when confusion is inevitable. *Ultra-White Co., Inc. v. Johnson Chem. Indus., Inc.*, 465 F.2d 891, 175 USPQ 166, 167 (CCPA 1972) (laches not applicable when confusion is inevitable; "notwithstanding the equities between the parties and the equitable principles of § 1069 [of the Trademark Act], the public interest expressed in § 1052 [of the Trademark Act] is the dominant consideration"). *Hornby,* 87 USPQ2d at 1419, n. 9 ("The only exception [to application of laches] is when confusion is inevitable, because any injury to

the defendant caused by the plaintiff's delay is outweighed by the public's interest in preventing confusion") (citation omitted).

Petitioner in the case at hand, in its combined response to Respondent's motion and cross-motion, failed to raise the issue of inevitable confusion as a basis for ultimately avoiding any indisputable showing of laches. Although Petitioner could be deemed to have waived this issue, the public interest in avoiding consumer confusion would not be served by finding waiver as to the question of whether confusion is inevitable. Accordingly, in our discretion, we do not find waiver. *Woods v. DeAngelo Marine Exhaust Inc.*, 692 F.3d 1272, 104 USPQ2d 1169, 1174 (Fed. Cir. 2012) (trial court has discretion in whether it finds waiver).

Therefore, we address the applicability of this issue. *See e.g.*, S*tahly, Inc. v. M. H. Jacobs Co.*, 183 F.2d 914, 86 USPQ 131, 133 (7th Cir. 1950) (in trademark and unfair competition case court sua sponte considered the likelihood of public deception and afforded appropriate relief as plaintiff could not waive the public's right to be safeguarded against fraud and deception). *See also Broadcast Innovation LLC v. Charter Communications Inc.*, 420 F.3d 1364, 76 USPQ2d 1220, 1222 (Fed. Cir. 2005) (appellate courts may address arguments beyond those originally presented by the parties to the district court, particularly where the issue presents significant questions of general impact or of great public concern). It follows, that if an appellate court can sua sponte consider a public interest that was not presented to a trial court,

then a trial court, and this Board, can sua sponte preserve for consideration at final hearing an issue for which relevant evidence has not yet been introduced.

Given the procedural posture of the motions for summary judgment, specifically, the fact that Respondent moved for summary judgment on its laches defense prior to trial and without Petitioner first having moved for summary judgment on its likelihood of confusion claim, there was no evidence on likelihood of confusion of record when we were called upon to consider the question of laches. We would not have expected Petitioner to put in all of its evidence on likelihood of confusion to defend against Respondent's motion, though it would have been preferable for Petitioner to at least acknowledge in its response or cross-motion the possibility that the evidence of confusion that it planned to produce at trial might show not a mere likelihood of confusion but that confusion was inevitable, and that determination of such issue should wait until all the evidence on confusion was put in.

We rely on the public interest and the possibility that evidence of confusion, when presented, might show that confusion is inevitable, as well as the particular procedural posture in which the question of laches was raised for consideration, to exercise our discretion not to find waiver. However, because Respondent has shown that there is no genuine dispute on the issue of laches, at trial Petitioner cannot prevail on a showing of mere

23

likelihood of confusion. Rather, Petitioner will have to put in evidence of confusion that shows confusion to be inevitable, which is "an increment higher than that required for a finding of likelihood of confusion." *Turner*, 52 USPQ2d at 1313 n.5 (citation omitted).

Accordingly, the parties' cross-motions for summary judgment are denied on the affirmative defense of laches with respect to the likelihood of confusion ground.

\* \* \*

In summary, Respondent's motion for summary judgment on its affirmative defense of laches is granted with respect to the dilution claims, and to that extent Petitioner's cross-motion is denied. We decline to enter summary judgment on the affirmative defense of laches for either party with respect to the likelihood of confusion claims. Petitioner's claims of dilution in the second amended consolidated petition to cancel in Cancellation Nos. 92056067 and 92056080 are dismissed with prejudice.

Proceedings are resumed as to the likelihood of confusion and fraud claims. As to the former ground, we reiterate the burden is now for Petitioner to show that confusion is inevitable, absent which the claim is barred by Respondent's affirmative defense of laches.

Dates are reset as follows:

| | |
|---|---|
| Answer to second amended petition to cancel due | **2/07/2015** |
| Expert Disclosures Due | **2/12/2015** |
| Discovery Closes | **3/14/2015** |
| Plaintiff's Pretrial Disclosures Due | **4/28/2015** |
| Plaintiff's 30-day Trial Period Ends | **6/12/2015** |

| | |
|---|---|
| Defendant's Pretrial Disclosures Due | **6/27/2015** |
| Defendant's 30-day Trial Period Ends | **8/11/2015** |
| Plaintiff's Rebuttal Disclosures Due | **8/26/2015** |
| Plaintiff's 15-day Rebuttal Period Ends | **9/25/2015** |

In each instance, a copy of the transcript of testimony, together with copies of documentary exhibits, must be served on the adverse party within thirty days after completion of the taking of testimony. Trademark Rule 2.l25.

Briefs shall be filed in accordance with Trademark Rules 2.128(a) and (b). An oral hearing will be set only upon request filed as provided by Trademark Rule 2.l29.