SAFEWAY STORES, INCORPORATED, a corporation, Plaintiff-Counter-defendant-Appellant,

v.

SAFEWAY QUALITY FOODS, INC., a corporation; Safeway of Brownsburg, Inc., a corporation; Supermarket Developers, Inc., a corporation; Michael DeFabis, Jr.; Philip DeFabis; Julius DeFabis; Ernest DeFabis and Roy M. Vittorio, Defendants-Counterclaimants-Appellees.

No. 17579.

United States Court of Appeals, Seventh Circuit.

June 9, 1970.

As Modified on Denial of Rehearing and Rehearing En Banc Denied Oct. 21, 1970.

R. J. Lindquist, Jr., R. C. Stanton, Oakland, Cal., Harry T. Ice, James E. Hawes, Jr., Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for appellant.

Thomas M. Scanlon, Patrick J. Fisher, Indianapolis, Ind., for appellees.

Before DUFFY, Senior Circuit Judge, and FAIRCHILD and CUMMINGS, Circuit Judges.

DUFFY, Senior Circuit Judge.

This suit is based on alleged trademark infringement and related unfair competition. Plaintiff seeks to enjoin defendants' use of the word "SAFEWAY" in connection with their operation of certain grocery stores in the Indianapolis, Indiana Metropolitan Area, and also to enjoin the use of "SAFEWAY" as a part of the corporate name and business name of the corporate defendants.

Paragraph I of the complaint claims plaintiff is entitled to relief under the Lanham Act, 15 U.S.C.A. § 1051 et seq.; Paragraph II charges unfair competition; Paragraph III charges the corporate defendants with adopting corporate names and business names confusingly similar to that of plaintiff and contrary to Burns' Ind.Stats. Sec. 25–203.

Defendants deny that plaintiff is entitled to any relief and also plead the affirmative defense of laches. Defendants also ask for concurrent registration of the service mark "SAFEWAY" on the principal register. The District Court found for the defendants.

The plaintiff is a Maryland corporation with principal office and place of business in Oakland, California. It was organized in 1926 and acquired a California corporation, Safeway Stores, Inc.

For the year ending December 31, 1963, plaintiff's gross sales were in excess of 2 billion 600 million dollars. At the end of that year, it had 1,827 stores in operation within the United States. However, with the exception of 219 stores in Maryland, Delaware, Virginia and the District of Columbia, it owned only three stores east of the Mississippi river, two

in Pennsylvania and one in Mississippi. The District Court noted that plaintiff never had a store in Indiana or in any of the four states adjacent to Indiana. The trial court also found that plaintiff has no plans for opening a store in any location within the State of Indiana and " * * * there is no likelihood that it will do so."

Plaintiff has in excess of 58,000 stockholders but less than 600 of them were residents of Indiana. The District Court found "In the area in which plaintiff operates retail grocery stores, and with the persons and companies with which plaintiff does business, the name and mark of 'SAFEWAY' signifies an organization with a good reputation."

It is admitted that the tradename and trademark "SAFEWAY" was not original with plaintiff. It appears to have been registered in the Patent Office by many corporations other than plaintiff.

The District Court also found "SAFE-WAY" has acquired a secondary meaning in the areas where it operates its supermarkets as signifying the plaintiff, its goods and services. The trial court stated: "However, the term has no such secondary meaning in Indiana."

In 1943 or 1944, Michael DeFabis, Sr., an Italian immigrant, who had no knowledge of plaintiff's existence, opened a small grocery store in Indianapolis, Indiana. He had a sign painter paint "SAFE-WAY MARKET" on a window of the store. From that time on, the DeFabis family has operated several grocery stores in the Indianapolis Area under the name "SAFE-WAY" or "SAFE-WAY."

In 1947, DeFabis turned over the management of the original market to Philip DeFabis and opened a second store called "Safeway Market # 2" and this store has been operated by defendants continuously to date. On July 29, 1957, "Safeway Quality Foods, Inc." was organized. On June 4, 1962 "Safeway of Brownsburg, Inc." was organized and shortly thereafter opened the "Safeway Brownsburg" store. "Supermarket Developers, Inc." was organized October 4, 1962.

Plaintiff became aware of defendants' grocery stores and their use of "SAFE-WAY" in connection with their grocery business as early as 1947. From time to time, plaintiff supplemented its information as to defendants and their business activities. The plaintiff did not inform any of the defendants of the claims it now asserts in this suit, until shortly prior to November 6, 1963, when it made a written demand that defendants discontinue the use of "SAFE-WAY."

In this suit, plaintiff charged defendants with a conspiracy to exploit plaintiff's name and good will and sought injunctive relief based upon the Lanham Act, Common Law Unfair Competition and the Indiana corporation laws.

The District Court found that the trade area of defendants is and has been limited to the Indianapolis Metropolitan Area.[1]

The trial court emphasized that the mark "SAFEWAY" has been used by Michael DeFabis, Sr. with whom all defendants are in privity, for many years before September 19, 1961 when plaintiff procured its Lanham Act Service mark registration No. 721,716. The Court also found the defendants were not chargeable with constructive notice of plaintiff's use of the mark and subsequent registrations thereof. Avon Shoe Co. v. David Crystal, 279 F.2d 607, 611 (2 Cir., 1960), cert.den. 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960).

The District Court also found that none of the defendants has conspired to trade upon plaintiff's registered marks, nor to appropriate the reputation, good will and value connected therewith. We agree!

1. The District Court defined the "Indianapolis Metropolitan Area" to include Marion County where Indianapolis is located, and the adjacent counties of Hendricks, Morgan, Johnson, Shelby, Hancock, Hamilton and Boone.

The trial court also found that evidence clearly shows that defendants, at no time, attempted to palm off goods sold by them as being the goods of plaintiff. Also, that the plaintiff and defendants are not competitive in any market. These findings are clearly established by the evidence.

Plaintiff urges that this Court should not consider itself bound and restricted in any way by Rule 52(a) F.R. Civ.P. (the "clearly erroneous" rule) because the District Court did not prepare separate and detailed findings of fact and conclusions of law. There is no merit to this argument.

Both parties submitted to the trial court proposed findings of fact and conclusions of law. The District Court adopted very little from either proposal, but the Court did draft its own Memorandum Opinion, and therein stated: " * * * we now express our findings of fact and conclusions of law in the form of this memorandum opinion." Thereafter, follows numerous pages of detailed findings under the heading of "Facts." Then follows a heading "Conclusions of Law" containing the legal reasonings adopted by the Court. We hold this was a sufficient compliance within Rule 52(a) F.R.C.P. which appropriate portion, states: "If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein."

Plaintiff now argues that there never has been any significant dispute as to material facts, but the three-day trial was not conducted on any such basis. To illustrate, plaintiff's complaint and amended complaint made serious charges against the DeFabis family, alleging that they had organized an unlawful conspiracy with others to exploit plaintiff's name, and that in order to carry out such conspiracy, they had organized "Supermarket Developers, Inc." in order to permit co-conspirators outside of the DeFabis family to make use of the SAFEWAY name. It also was alleged that the defendant corporations were the

" * * * alter ego of the DeFabis defendants. * * * "

All such charges were denied by defendants, and plaintiff then subjected the DeFabis family to extensive discovery, including interrogatories, demands for admissions, and production of books and records. At the trial defendants produced twelve witnesses who were vigorously cross-examined. Thereafter, plaintiff attacked the credibility of defendants' witnesses who testified as to the good faith of the DeFabis family in operating grocery stores under the name of "SAFEWAY" continuously since 1943 and with no knowledge of the plaintiff or its trademark until 1952.

In view of the proof offered by a listing in a 1945 telephone directory, plaintiff did admit that the DeFabis family used the name "SAFEWAY" as early as the early months of 1945.

Plaintiff relies on Independent Nail & Packing Co., Inc. v. Stronghold Screw Products, Inc., 205 F.2d 921 (7 Cir., 1953), cert.den. 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391 (1953) as standing for the proposition that the innocent adoption by a junior user is no defense if the junior user has been guilty of progressive encroachment upon the rights of the senior user.

We hold that our decision in Independent Nail is not controlling here. In that case, the plaintiff and defendant were in competition with each other; both sold their products throughout the United States; both contacted the same prospective customers; defendant circulated its catalog to plaintiff's customers.

Plaintiff also claims to find comfort in our decision in Burger King of Florida, Inc. v. Hoots, 403 F.2d 904 (7 Cir., 1968). Plaintiff urges that under the teaching of Burger King, when the defendants grew and modernized in the Indianapolis area after plaintiff had registered its mark on September 19, 1961, they thereby violated rights which plaintiff had obtained from its federal registration.

However, we said in *Burger King, supra,* 403 F.2d at page 907, "At common law, defendants were entitled to protection in the * * * market area because of the innocent use of the mark prior to plaintiffs' federal registration." In *Burger King,* we enjoined the plaintiff from interfering with defendant's use of its mark in that area.

Furthermore, in *Burger King,* the junior user unsuccessfully endeavored to enjoin the senior user from using the mark anywhere in the State of Illinois although the junior user had only appropriated for himself the Mattoon, Illinois, market area prior to plaintiff's federal registration.

In the case at bar, there was a further finding by the District Court that even assuming plaintiff had proved its case on Counts I and II, and was otherwise entitled to an injunction, it was barred by laches. Again we agree!

■■ As heretofore stated, defendant started using the mark and name "SAFEWAY" by 1945 without any knowledge of plaintiff's use. In 1947, plaintiff had learned of this use and supplemented its information on this subject from time to time thereafter. For sixteen years it did nothing to put the defendants upon notice of its claims. Plaintiff is chargeable with the information it might have received had due inquiry been made. Pearson v. Central Ill. Light Co., 210 F.2d 352, 356–357 (7 Cir., 1954).

Plaintiff argues the District Court disregarded Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888). We think this case is not applicable here in view of the later Supreme Court decision in United Drug Company v. Theodore Rectanus Company, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141 (1918), which limited *Menendez* to cases of conscious infringement or fraudulent imitation.

That defendants' operations have been of a local limited nature is also shown by the finding that defendants have purchased in the State of Indiana approximately 99% of the merchandise used by them. Furthermore, sales of their merchandise are on a cash and carry basis to recipients in the Indianapolis Metropolitan Area.

Plaintiff vigorously assails the holding of the District Court in determining that defendant Safeway Quality Foods, Inc. " * * * is entitled to concurrent registration of the service mark 'SAFEWAY' for retail grocery services, * * limited * * * to the Indianapolis, Indiana metropolitan area, * * * " as defined by the Court and hereinbefore described.

The District Court ordered the concurrent registration pursuant to 15 U.S.C. § 1052(d). That statute as is here pertinent, states: " * * * Concurrent registrations may also be issued *by the Commissioner* when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce. In issuing concurrent registrations, *the Commissioner* shall prescribe conditions and limitations as to the mode or *place of use* of the mark." [Emphasis ours]. Though the statute indicates that the Court may determine that " * * * more than one person is entitled to use the same * * * mark * * * " it is clearly stated that the Commissioner, not the Court, determines the " * * * conditions and limitations as to the mode or *place of use* of the mark." [Emphasis ours].

■ We agree with the District Court that more than one person is entitled to use the mark "SAFEWAY" in commerce. Such registration can be ordered under 15 U.S.C. § 1052(d). See *Avon Shoe Co., supra,* 279 F.2d at page 615. However, we feel that the Commissioner should be the one to determine the place or places of use of the mark by defendants.

■■ It is not disputed that plaintiff registered the mark "SAFEWAY" with the United States Patent Office

effective September 19, 1961. Such registration puts even innocent users on constructive notice of plaintiff's claim of ownership of the mark after that date. However, defendants' innocent continuous use of the mark prior to that date can be and is a defense, " * * *Provided, however,* That this defense * * * shall apply only for the area in which such continuous prior use is proved * * *." (15 U.S.C. § 1115(b)(5)).

In the case at bar, we hold defendants should be protected in their prior innocent use of the mark "SAFEWAY" and that they may continue to use such mark in the areas where defendants operated and conducted their businesses prior to September 19, 1961.

We do not hold that the stores or places of business operated by defendants should be limited to the conditions existing in September 1961. We think it would be reasonable to expect a store owner to repair and improve his place of business, and it makes no difference whether such store be labeled market, super-market or corner grocery store.

We hold that the District Court was correct in determining that defendants are also entitled to use the mark "SAFEWAY" in commerce. However, we hold that the District Court was without authority to prescribe the geographical limitations of the concurrent use. We order the District Court to certify to the Commissioner that it has been determined that defendants are entitled to concurrent registration of the mark "SAFEWAY" and direct the Commissioner to issue such concurrent registration and to prescribe the conditions and limitations of such use in the light of the innocent use by defendants prior to September 19, 1961 (15 U.S.C. § 1119).

Except for that part of the order and judgment of the District Court directing the geographic limitations of the issuance of a concurrent registration of the mark "SAFEWAY", said judgment is hereby affirmed.

Affirmed in part and remanded for issuance of a certificate to the Commissioner of Patents as hereinbefore indicated.

Affirmed in part and remanded.