In the

# United States Court of Appeals

### For the Seventh Circuit

Nos. 01-1897, 01-2039

CHATTANOGA MANUFACTURING, INC.,

*Plaintiff-Appellant,*
*Cross-Appellee,*

*v.*

NIKE, INC.,

*Defendant-Appellee,*
*Cross-Appellant,*

and

MICHAEL JORDAN and DOES #1-10,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 7043—**Ruben Castillo**, *Judge.*

ARGUED APRIL 4, 2002—DECIDED AUGUST 21, 2002

Before RIPPLE, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* Chattanoga Manufacturing, Inc. sued Nike Inc. and Michael Jordan, alleging trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) & 1125(a). Nike filed counterclaims, alleging that Chattanoga's trademark was

improperly registered by the United States Patent and Trademark Office ("PTO") and should be cancelled. The district court found that Chattanoga's trademark infringement claims were barred under the doctrine of laches and that Michael Jordan could not be held liable in his personal capacity. We affirm.

## I. Background

### A. *Chattanoga Manufacturing, Inc.*

In 1979, Morris Moinian and Jimmy Soufian founded Chattanoga and its Jordan Blouse Division in order to manufacture women's blouses and other women's apparel, such as tank tops, shirts, jumpsuits, sweaters, pants, and dresses. Chattanoga manufactures and sells only women's apparel, and it has never sold, made, or distributed men's clothing or footwear. Initially coined by Moinian, Chattanoga's Chairman, Chattanoga claims to have continuously used the mark JORDAN to identify its Jordan Blouse Division products, although defendants disagree and note that Chattanoga has used other labels on its products.

In 1997, Chattanoga applied for trademark registration for JORDAN for use on "women's wearing apparel, namely blouses, sweaters, tee shirts[,] jackets, vests, pants, trousers, skirts, suits, dresses, jumpers, jump suits, jogging suits, exercise wear and women's underwear." Although the PTO initially rejected Chattanoga's trademark application on several grounds, the PTO granted a Certificate of Registration on Chattanoga's second trademark application for JORDAN in October 1998.

### B. *Nike, Inc. and Michael Jordan*

Nike was established in 1971 and is one of the world's leading sports and fitness companies. Nike designs, manu-

factures, and markets expensive footwear, apparel, equipment, and accessory products and sells its products through foreign and domestic retail accounts and distributors. Throughout Michael Jordan's highly-regarded professional basketball career, his uniform has prominently displayed the name "Jordan" and the number "23," except for a brief use of the number "45."

In 1984, Nike and Jordan entered into a very successful business relationship, and since that time, Nike has manufactured and distributed many millions of dollars of Michael Jordan-endorsed footwear, apparel, and accessories. Nike has often described Michael Jordan-endorsed products as "Jordan [type of product]." For example, in Nike's Fall 1990 catalog, there are apparel products identified as "Jordan Pullover," "Jordan Shooting Shirt," "Jordan Short," and "Jordan Muscle Tank." Additionally, Nike also uses the name "Jordan" in combination with Nike's Jumpman logo.[1] Beginning in 1985, the Jumpman logo always accompanied "Jordan," even when the only word Nike displayed on a product was "Jordan." Further, all Michael Jordan-endorsed Nike products display indicia of Michael Jordan, including the Jumpman logo and one or more of the following: photographs of Michael Jordan, the initials MJ, and/or the number 23, which is sometimes depicted as "two3." Under the current contract between Nike and Jordan, Nike has the right to use Jordan's name and image in connection with a variety of Nike products in exchange for compensation. The contract states that Nike is the "sole and absolute owner" of the Michael Jordan-related marks.

Since 1984, all of the Michael Jordan-endorsed Nike apparel and footwear products have been designed for

---

[1] The Jumpman logo is a silhouette of an actual photograph of Michael Jordan in mid-air about to attempt a slam dunk.

men, boys, and very small children, with the exception of one type of women's athletic shoes sold in 1999. Over the years, several different business units within Nike were responsible for Nike's Michael Jordan-endorsed products. However, in 1997, Nike established the Jordan Brand Division of Nike, a specific internal business unit devoted to Nike's Michael Jordan-endorsed products.

## C.  District Court Proceedings

In October 1999, Chattanoga filed suit seeking damages and injunctive relief, alleging that Nike's use of the term Jordan constituted infringement and unfair competition under the Lanham Act. Defendants responded, *inter alia,* by asserting the equitable defense of laches and by filing counterclaims, which alleged that Chattanoga's JORDAN trademark was invalid and should be canceled. The parties filed cross-motions for summary judgment, and the district court granted Nike's and Michael Jordan's motion on the ground of laches but denied summary judgment on the remaining issues.[2]

With respect to laches, the district court began by attributing Chattanoga with constructive notice of the alleged infringement as early as 1985 and no later than 1990. The court noted Nike's prominent advertisement campaign and Chattanoga's admission that the media often

---

[2] Alternatively, the district court found that Michael Jordan's motion should be granted because the evidence did not establish that he could be found personally liable. As Chattanoga does not address this issue in their opening brief it is therefore waived, notwithstanding their arguments to the contrary, *see Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998), and provides a sufficient basis for affirming the district court's judgment as to Michael Jordan. *See id.*

referred to Nike's Michael Jordan-endorsed products as "Jordan products." Next, the district court noted that Chattanoga's delay was three times longer than the applicable statute of limitations, thereby creating a presumption of unreasonable delay. Because Chattanoga failed to excuse its delay, the district court found Chattanoga's delay to be unreasonable. Finally, the district court found that the substantial amount of money invested by Nike in marketing and advertising its Michael Jordan-endorsed products constituted sufficient prejudice to Nike if Chattanoga was allowed to assert its alleged rights at this time.

Chattanoga appeals, claiming that the district court abused its discretion in finding laches because any delay was reasonable. Nike cross-appeals, alleging that its counterclaims should not have been dismissed, or in the alternative, should have been dismissed without prejudice.

## II. Analysis

### A. Laches

While we review *de novo* whether there are any disputed issues of material fact, our review of whether the district court properly applied the doctrine of laches is for an abuse of discretion. *See Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). The doctrine of laches is derived from the maxim that those who sleep on their rights, lose them. *See id.* at 820. For laches to apply in a trademark infringement case, the defendant must show that the plaintiff had knowledge of the defendant's use of an allegedly infringing mark, *see Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1040 (2d Cir. 1980), that the plaintiff inexcusably delayed in taking action with respect to the defendant's use, and that the defendant would be prejudiced by allowing the plaintiff to assert its rights at this time. *See Hot Wax*, 191 F.3d at 820;

*see also* 5 J. Thomas, McCarthy, MCCARTHY ON TRADE-MARKS AND UNFAIR COMPETITION § 31:1, at p. 31-8 (2001).

Addressing the first part of the analysis, it is clear that a plaintiff must have actual or constructive notice of the defendant's activities. *See Blue Ribbon Feed Co. v. Farmers Union Cent. Exch., Inc.*, 731 F.2d 415, 419 (7th Cir. 1984); *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103-04 (7th Cir. 1970) ; *see also* 5 MCCAR-THY § 31:38, at p. 31-78. With regard to constructive notice, the United States Supreme Court stated over one hundred years ago that:

> [T]he law is well settled that where the question of laches is in issue the plaintiff is chargeable with such knowledge as he may have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry.

*Johnston v. Standard Mining Co.*, 148 U.S. 360, 370, 13 S. Ct. 585, 37 L. Ed. 480 (1893). Further, we have previously held that a trademark owner is "chargeable with information it might have received had due inquiry been made." *Safeway*, 433 F.2d at 103.

The district court attributed constructive notice to Chattanoga as early as 1985 and no later than 1990, and we agree. First, it is undisputed that Nike launched a prominent, national advertising campaign for its Michael Jordan-endorsed products in 1985. Since then, Nike has produced and aired numerous advertisements involving Michael Jordan and Jordan-endorsed Nike products and those products are often called "Jordan" products. Given the prominence of Nike's advertising of its Michael Jordan-endorsed products, we believe that Chattanoga had constructive notice of Nike's use of their Jordan marks in

1985.[3] *See Safeway*, 433 F.2d at 103-04; *see also E-Systems, Inc. v. Montek, Inc.*, 720 F.2d 604 (9th Cir. 1983) (finding that laches barred injunction even though "[a] few consumers may be confused," because plaintiff "ought to have discovered defendant's use sooner had it been diligently seeking to enforce its mark"). Moreover, Chattanoga concedes that "since at least 1990, the media in the United States have referred to products identified or associated with Defendant Michael Jordan, including products manufactured, sold and/or distributed by Nike, with the term 'Jordan' ('Jordan' shorts, caps, shoes, etc.)." Therefore, the district court did not error in concluding that Chattanoga was chargeable with knowledge of Nike's use of its Jordan marks no later than 1990. *See Safeway*, 433 F.2d at 104.

Next, we turn to whether Chattanoga's delay was unreasonable. *See Hot Wax*, 191 F.3d at 822-23. In finding Chattanoga's delay unreasonable, the district court followed our dictate in *Hot Wax* and "referred to analogous state statutes of limitations to determine whether a presumption of laches should apply." *Id.* at 821. The district court found that the most analogous Illinois limitation period was the three-year statute of limitations found in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a(e), and that Chattanoga's delay of at least nine years thus created a presumption of laches. Because Chattanoga failed to rebut this presumption and excuse its delay, the district court found Chattanoga's delay to be unreasonable.

On appeal, Chattanoga first argues that any delay may be excused under the doctrine of progressive encroach-

---

[3] This is not to say that laches should *always* be measured from defendant's very first use of the contested mark, *see*, *e.g.*, 5 MCCARTHY § 31:19, at p. 31-47, only that it is appropriate to do so in the present case.

ment. "Under this doctrine, where a defendant begins use of a trademark or trade dress in the market, and then directs its marketing or manufacturing efforts such that it is placed more squarely in competition with the plaintiff, the plaintiff's delay is excused." *Kason Ind. v. Component Hardware Group*, 120 F.3d 1199, 1205 (11th Cir. 1997). Chattanoga contends that Nike's Michael Jordan-endorsed products progressively encroached into the women's apparel market, culminating with the establishment of the Jordan Brands Division in 1997, and thus, any delay in bringing suit before 1997 should be excused.

While we agree with Chattanoga that "[t]he doctrine of progressive encroachment is relevant in assessing whether laches applies to bar a trademark claim," *id.*, we conclude that the district court correctly found it inapplicable here. Chattanoga presents no evidence that over time Nike has directed its Michael Jordan-endorsed products' marketing or manufacturing efforts to compete more directly with Chattanoga's women's apparel, and therefore, there is no progressive encroachment at this time. *See id.*; *cf. SCI Sys., Inc. v. Solidstate Controls, Inc.*, 748 F. Supp. 1257, 1263 (S.D. Oh. 1990) (denying laches defense where defendant had "expanded its line and entered into new marketing areas").

On appeal, Chattanoga's entire argument for why laches should not apply is based upon the contention that the creation of the Jordan Brands Division entirely changed Nike's relation with the women's apparel market. However, the record fails to establish that the creation of the Jordan Brands Division directed Nike's manufacturing or marketing efforts more squarely in competition with the women's apparel market. *See Kason*, 120 F.3d at 1207. Therefore, without evidence of progressive encroachment, Chattanoga's claim today is the same trademark infringement case it had in 1985, and Chattanoga's progressive encroachment argument

amounts to "nothing more than a *post hoc* rationalization for [its] unreasonable delay."[4] *See Hot Wax*, 191 F.3d at 823.

Chattanoga next contends that its delay was reasonable because "taking enforcement action at th[at] time would not have been successful." However, Chattanoga had a provable claim against Nike in 1985 or 1990 given, among other things, the similarity between Chattanoga's JORDAN mark and Nike's Jordan marks and the strength of Nike's marks.[5] *See, e.g., S. Rodofker's Sons, Inc. v. Genesco Inc.*, 150 U.S.P.Q. 821, 823 (T.T.A.B. 1966) (denying registration of women's lingerie manufacturer because men's formal wear found in same stores and the substantially similar marks "would be likely to lead purchasers to mistakenly assume that they originate with or are in some way associated with the same producer"). Chattanoga should have known they had a provable claim for infringement as early as 1985 and no later than 1990, and therefore, we agree with the district court that any delay by Chattanoga was inexcusable. *See Hot Wax*, 191 F.3d at 822-24.

We now turn to the issue of whether Chattanoga's unreasonable delay prejudiced Nike. A delay prejudices a

---

[4] Chattanoga's progressive encroachment argument is further undermined by its own admissions. Before the district court, Chattanoga relied on anecdotal evidence in support of its claim. According to Chattanoga, "in 1992 . . . [it] was thwarted in its effort to market its own line of 'Jordan' tee shirts to a major retailer on the basis of the latter's concern that the products would be confused with products from Michael Jordan and Nike." Therefore, even if we assumed there was progressive encroachment by Nike, which there was not, Chattanoga should have sued Nike in 1992.

[5] The district court found that the marks were "nearly identical, with the exception that Chattanoga's mark has an elongated 'J.'"

defendant when the assertion of a claim available for some time would be inequitable in light of the delay in bringing that claim and ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed. *See Hot Wax*, 191 F.3d at 824. We have previously noted that "laches is a question of degree" and that "if only a short period of time has elapsed since the accrual of the claim, the magnitude of prejudice required before the suit should be barred is great, whereas if the delay is lengthy, prejudice is more likely to have occurred and less proof of prejudice is required." *Id.* Prejudice may be shown if the plaintiff's unexcused failure to exercise its rights caused the defendant to rely to its detriment and build up a valuable business around its trademark. *See id.*; *see also Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996); 5 MCCARTHY § 31:12, at pp. 31-36 to 31-37.

In *Hot Wax*, we began by noting that the plaintiff "sat idly by and chose not to challenge" the defendant's use of the disputed mark, while the defendant invested significant amounts of time and money in product development and advertising over a ten to twenty-year period. 196 F.3d at 824. We explained that had the plaintiff successfully pressed its claim in a timely manner, the defendant could have invested its time and money in other areas or simply renamed its products. *See id.* We found such circumstances to constitute sufficient prejudice as a matter of law. *See id.* In *Conopco*, the Second Circuit held that prejudice could result from a defendant committing itself to an expensive advertising and marketing strategy. *See* 95 F.3d at 192 ("By waiting over five years to assert its present claim, [plaintiff] precluded the possibility that [defendant] could effectively adopt an alternative marketing position.").

Here, the prejudice is similar if not more severe than in *Hot Wax* and *Conopco*. For over fifteen years, Nike has

spent millions of dollars annually promoting its Michael Jordan-endorsed products and has acquired a position as a market leader. Had Chattanoga challenged Nike's use of the term Jordan in a timely manner and prevailed, Nike could have promoted its products in a number of different ways. Accordingly, given the length of the unreasonable delay by Chattanoga and the vast amount of money spent by Nike, we conclude that the district court did not err in concluding that Nike was prejudiced by this delay.

## B.  Cross-Appeal

Without discussion, the district court denied Nike's counterclaims as moot and dismissed them with prejudice. While we agree that the finding of laches moots Nike's counterclaims because with that finding there is no ripe case or controversy between the parties, it was error to dismiss the counterclaims with prejudice. Moinian testified that he might pass off Chattanoga garments as Michael Jordan-endorsed, if it helped him to "get even" with Nike, and there was some evidence that he attempted to do so the year before initiating the present lawsuit.[6] Thus, although the current dispute between the parties is moot, a future one is possible. If a dispute ripens between the parties, Nike should have the opportunity to litigate its claims. Therefore, we will affirm the district court's dismissal of Nike's counterclaims but modify the dismissal to be without prejudice.

---

[6]  We express no opinion on the merits of this or any other claim that Nike may make against Chattanoga.

## III.  Conclusion

For the foregoing reasons, we MODIFY the judgment of the district court, and the judgment, as modified, is AFFIRMED.

A true Copy:

       Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-97-C-006—8-21-02