BEST CHAIRS INCORPORATED,
Plaintiff,

v.

FACTORY DIRECT WHOLESALE, LLC, Eastern Enterprises, LLC, Pay Less Here LLC, Hanping LIU in both his individual and corporate capacities, Rowland Direct Wholesale, John Doe, Jane Doe and Unknown Others, Defendants.

No. 3:14–cv–00067–RLY–WGH.

United States District Court,
S.D. Indiana,
Evansville Division.

Signed Aug. 4, 2015.

James M. Hinshaw, Bingham Greenebaum Doll LLP, Indianapolis, IN, Reva D. Campbell, Bingham Greenebaum Doll LLP, Louisville, KY, for Plaintiff.

Paul B. Overhauser, Overhauser Law Offices, LLC, Greenfield, IN, for Defendants.

Rowland Direct Wholesale, pro se.

John Doe, Jane Doe and Unknown Others, pro se.

## ENTRY ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT and DEFENDANTS' MOTION FOR HEARING

RICHARD L. YOUNG, Chief Judge.

Plaintiff, Best Chairs Incorporated, brings a seven-count Amended Complaint against the defendants herein, Factory Direct Wholesale, LLC, Eastern Enterprises, LLC, Pay Less Here, LLC, Hanping Liu, in both his individual and corporate capacities, Rowland Direct Wholesale, John and Jane Doe and unknown others, for trademark infringement and other related claims under federal and Indiana law. Factory Direct and the Newly–Added Defendants—Eastern Enterprises, Pay Less Here, and Liu—separately now move to dismiss the Amended Complaint for lack of personal jurisdiction, for failure to state a claim upon which relief can be granted, and for failure to bring suit within the applicable statute of limitations. Factory Direct and the Newly–Added Defendants' (collectively "Defendants") also move for a hearing on the motions to dismiss. The court, having read and reviewed the parties' supporting and opposing briefs, the designated evidence, and the applicable law, now finds Factory Direct's Motion to Dismiss should be **DENIED,** the Newly–Added Defendants' Motion to Dismiss should be **DENIED,** and the Defendants' Motion for Hearing should likewise be **DENIED.**

## I. Motion for Hearing

Defendants move for an evidentiary hearing on their Motions to Dismiss because, they argue, "there are factual disputes regarding personal jurisdiction" and a hearing "would properly subject Plaintiff to a 'preponderance of the evidence' burden of proof to establish personal jurisdiction, instead of allowing it to resort to only a *prima facie* burden." (Filing No. 121, Defendants' Motion for Hearing). This motion is problematic for two reasons. First, Defendants fail to identify what material facts are in dispute. Second, the court does not set matters for hearing merely to subject the plaintiff to a higher

burden of proof. Defendants' Motion for a Hearing is therefore **DENIED.**

## II. Factual Background

The court accepts the following facts as true for purposes of the present motions to dismiss.

### A. The Parties

Best Chairs is a furniture company headquartered in Ferdinand, Indiana. For over 50 years, BCI has been doing business throughout the United States using a family of trademarks that incorporate the name "BEST." These include BEST CHAIRS, INC. & Design, BEST HOME FURNISHINGS, THE POWER OF BEST, and BEST–MAX ("BEST Trademarks"). (Filing No. 65, Am. Compl. ¶ 23).

Hanping Liu is the owner and Chief Executive Officer of Factory Direct and related entities, Eastern Enterprises, LLC and Pay Less Here, LLC. (Filing No. 119–2, 30(b)(6) Deposition of Hanping Liu ("30(b)(6) Dep.") at 10, 32). Factory Direct sells "BestChair," "Best Chair," and "BestOffice" chairs and other furniture products on its own websites (www.factory directwholesale.com and allpetstroller.com) and on various third-party interactive retail websites such as Amazon.com, eBay. com, NewEgg.com, Rakuten.com, and Globalindustrial.com. (*Id.* at 15, 21–22). On such third-party retail sites, Factory Direct often sells its furniture products under the usernames or store names of Factory Direct, Eastern Enterprises, Cavalier Wholesale,[1] Valuemassage, Best4Less, and Discounted Massage Wholesaler. (*Id.* at

18–22, 32–33; Filing No. 119–3, Factory Direct's Response to Interrogatory No. 16; Filing No. 119–4, Response to Request for Admission No. 13). Factory Direct has an account with each of these websites that enables it to manually identify itself and to manually input and describe the "Best-Chair" products it intends to sell there. (*See, e.g.,* 30(b)(6) Dep. at 23). In addition, Factory Direct lists information regarding its company, shipping and return policies, and other terms and conditions. On New-Egg.com, Factory Direct has a virtual storefront which contains all 65 "Best-Chair" products sold by Factory Direct under the username "Best4Less." (Filing No. 94–15, The "BestChair" Store at New-Egg.com).

All of the sales generated through "BestChair" online sales are funneled to Factory Direct for shipment to consumers. (30(b)(6) Dep. at 18, 20, 34). In addition, all of these entities, stores names, and usernames operate out of the same building—2855 North Berkeley Lake Road, Duluth, Georgia—and each company employs the same 15 employees, including the same five customer service employees to respond to customer issues for BestChair products for all of Liu's respective companies. (*Id.* at 11, 13, 14, 57).

### B. Sales of "BestChair" Products/Consumer Confusion

In 2012, Best Chairs was notified of a "BestChair" office chair listed on Amazon's website sold by Cavalier Wholesale. (Filing No. 94–1, Declaration of Patrick Miller ("Miller Dec.") ¶ 16). Best Chairs ordered a chair, which was delivered with no marking of "BestChair" on the packaging mate-

---

1. For example, only Cavalier Wholesale sells Factory Direct products on Amazon.com under the store name Eastern Enterprises, and Value Massage sells Factory Direct products under the store name Discounted Massage Wholesaler. (30(b)(6) Dep. at 18, 20). Pay

Less Here has a physical location in Duluth, Georgia which handles all returns of Factory Direct products. (*Id.* at 32). Liu plans to sell products through Pay Less Here on Amazon.com and eBay.com in the near future. (*Id.* at 33).

rials when it was actually delivered. (Id.). The shipping label on the delivered product identified the seller as "Cavalier Wholesale, 2351 Button Gwinnett Drive, Suite 800, Doraville, GA 30340." (Id.). Since the only use of "BestChair" was on Amazon's website, Best Chairs filed a trademark complaint with Amazon on April 18, 2012. (Id.; Filing No. 94–2, 2012 Amazon Complaint). Amazon discontinued use of the designation "BestChair," and Best Chairs considered the matter resolved. (Miller Dec. ¶ 16). At that time, Best Chairs was unaware of a connection between Cavalier Wholesale and Factory Direct. (Am.Compl. ¶ 28).

On January 6, 2014, Best Chairs received notification from the Better Business Bureau located in Evansville, Indiana, regarding a complaint against Best Chairs/ Best Home Furnishings by a consumer claiming he purchased a defective office chair through internet retailer Rakuten.com from Best Chairs. (Am. Compl. ¶ 59; Filing No. 94–4, Better Business Bureau complaint). Best Chairs' investigation into the matter revealed the product had been sold through Rakuten's website and the "Marketplace Seller" was identified on the website as "BestChair." (Am. Compl. ¶¶ 39, 59). Upon further investigation, Best Chairs determined the product was being sold by Factory Direct and similarly marketed on Amazon.com and eDeal-info.com. (Id. ¶¶ 39, 40–42, 59).

On January 16, 2014, Best Chairs requested that Factory Direct cease and desist use of the "BestChair" designation. (Id. ¶ 63). Factory Direct responded that it could not find any evidence of Best Chairs' use of the mark and would take no steps to prevent consumer confusion. (Id. ¶ 64). Factory Direct then filed an application with the United States Patent and Trademark Office on March 26, 2014, declaring its intent to use "BestChair" as its

own trademark. (Id. ¶¶ 43, 68; see also id., Ex. C).

Following the cease and desist letter, the evidence reflects that three more instances of consumer confusion occurred. For example, in February, 2014, an Amazon.com customer ordered two chairs from Cavalier Wholesale that were defective. Both the customer and Amazon.com contacted Best Chairs' representatives communicating their erroneous beliefs that Best Chairs was the manufacturer of Factory Direct's "BestChair" products. (See Filing No. 95–1, Amazon.com communications with Factory Direct customer, at BCI–004155–4157; see also id. at BCI–004161–4163) (customer noting "the problem is no one wants to admit they made these chairs"). In September 2014, a similar customer encounter occurred— Amazon.com informed a Factory Direct customer that Best Chairs was the manufacturer of the defective chair. (Filing No. 95–2, Amazon.com communications with Factory Direct customer, at BCI–004108). And finally, one of Best Chairs' dealers, Weaver Furniture, asked Best Chairs' sales representative, Tony Oeding, to purchase the "Best Chair: 'High Back Executive Leather Ergonomic Office Desk Computer Chair 010'" on Amazon.com for a customer. (Filing No. 94–9, Declaration of Tony Oeding ¶ 4). Oeding was unaware that Best Chairs was selling on Amazon.com; therefore, he asked his assistant to contact a representative of Weaver Furniture, who sent them a website link for the chair on Amazon.com. (Id. ¶ 8). Upon inquiry, Best Chairs informed Oeding that the chair on Amazon.com was not a Best Chairs product. (Id. ¶ 9).

On June 11, 2014, Factory Direct filed another "Best" trademark application— this time for the mark "BestOffice" (Serial No. 86/306,259) covering the goods of "furniture for house, office and garden; office

chairs; office desks; office furniture; office tables." (Filing No. 94–12, Factory Direct's trademark application).

## C. Sales to Indiana Residents

Factory Direct holds itself out as open to doing business with 48 states, including Indiana. (*See, e.g.,* Filing No. 94–16, Factory Direct's Marketplace Seller Online Store at www.globalindustrial.com). The limited discovery to date reflects that from January 2013 through September 2014, Factory Direct sold $6,000,000 worth of "BestChair" product throughout the United States. (*See, e.g.,* Filing No. 95–3), (Factory Direct Sales Figures in Indiana for 2013 and part of 2014). Approximately $102,500 of those sales were to Indiana residents. *Id.* According to Best Chairs, the $102,000 sales figure represents approximately 1,500 infringing "BestChair" products sold in Indiana. (*See id.; see also* Filing No. 97–1, Factory Direct communications with Indiana purchasers).

## III. Motion to Dismiss for Lack of Personal Jurisdiction

■ When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir.2003). As such, a plaintiff need only make a prima facie showing of jurisdictional facts. *See Felland v. Clifton,* 682 F.3d 665, 672 (7th Cir.2012). "In evaluating whether the prima facie standard has been satisfied, the plaintiff 'is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.'" *Purdue Research,* 338 F.3d at 782 (quoting *Nelson by Carson v. Park Indus., Inc.,* 717 F.2d 1120, 1123 (7th Cir. 1983)).

■ Since Best Chairs brought claims under the Lanham Act, which does not authorize nationwide service of process, a federal district court has personal jurisdiction over a nonresident defendant if a court of the state in which it sits would have such jurisdiction. *Id.* at 779. In Indiana, personal jurisdiction depends on whether the requirements of the state's long-arm statute are met and whether federal due process requirements are satisfied. *Id.* Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute. Because Indiana's long-arm statute expands personal jurisdiction to the full extent permitted by the Due Process Clause, *LinkAmerica Corp. v. Albert,* 857 N.E.2d 961, 966–67 (Ind.2006), the sole inquiry before the court is whether exercising personal jurisdiction over the Defendants would offend due process.

■ Personal jurisdiction over a nonresident defendant meets the standard of due process when the defendant has established minimum contacts within the state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin,* 601 F.3d 693, 700–01 (7th Cir. 2010) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Personal jurisdiction may be either general or specific. General jurisdiction over a defendant exists where the defendant has continuous and systemic business contacts with the state, even where those contacts do not relate to the action at issue. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction, on the other hand, "exists for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir.2002)

(citing *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir.1998)).

The parties focus their arguments on specific, rather than general, jurisdiction. Plaintiff maintains the court has specific personal jurisdiction over Factory Direct under the "effects" or "express aiming test," and specific personal jurisdiction over Eastern Enterprises, Pay Less, and Liu under a conspiracy theory.

## A. Specific Jurisdiction over Factory Direct

■ Specific jurisdiction is appropriate when: (1) "the defendant has purposefully directed its activities at the forum state or purposefully availed himself of the privilege of conducting business in that state"; (2) "the alleged injury arises out of the defendant's forum-related activities"; and (3) "[t]he exercise of jurisdiction must also comport with traditional notions of fair play and substantial justice." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir.2014) (citing *Tamburo*, 601 F.3d at 702).

### 1. Conduct Purposefully Directed at the Forum State

■ Where, as here, the plaintiff's claims against the out-of-state defendant are for intentional torts, the jurisdictional inquiry focuses on whether the conduct underlying the claims was purposefully directed at the forum state. *Tamburo*, 601 F.3d at 702. The reason for this requirement is to ensure that an out-of-state defendant is not required to appear based on random, fortuitous, or attenuated contacts with the forum state. *Id.*

In *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court provided "useful contours in conducting the purposeful-direction requirement in a tort case." *Felland*, 682 F.3d at 674. In *Calder*, a California ac-

tress brought an action in California state court against two *National Enquirer* employees for their involvement with an allegedly libelous article written about plaintiff. The defendants, both residents of Florida, challenged personal jurisdiction in the California court. Although the article was written in Florida, "the brunt of the harm, in terms both of [plaintiff=s] emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788–89, 104 S.Ct. 1482. The Supreme Court held that personal jurisdiction over the defendants was proper in California based on the "effects" of their Florida conduct in California. *Id.* at 789, 104 S.Ct. 1482. In its analysis, the Court specifically noted that the defendants were "not charged with mere untargeted negligence," but rather with undertaking intentional, and allegedly tortious, actions "expressly aimed at California." *Id.* Under these circumstances, the Court concluded that defendants "must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article." *Id.* at 790, 104 S.Ct. 1482 (citations omitted).

In *Tamburo*, *supra*, the Seventh Circuit distilled three requirements from *Calder* for determining whether the purposeful-direction requirement is met: (1) "intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." 601 F.3d at 703. Defendants do not contest that they engaged in intentional conduct by purposefully selling chairs online. The court thus turns to the other two elements.

#### a. Expressly Aimed at Indiana

■ To establish a defendant's conduct was aimed at the forum state, a plaintiff must show that "the defendant's suit-relat-

ed conduct ... create[s] a substantial connection with the forum State." *Walden v. Fiore,* —— U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014). The *Walden* Court emphasized that "the plaintiff cannot be the only link between the defendant and the forum"; "it is the defendant's conduct that must form the necessary connection with the forum State." *Id.* at 1122 (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

■ The Seventh Circuit's decision in *Illinois v. Hemi Group LLC* is instructive. 622 F.3d 754 (7th Cir.2010). Hemi, based out of New Mexico, sold cigarettes over the internet to 49 states, specifically excluding New York. *Id.* at 755–56. The only specific sales to an Illinois resident were instigated by an Illinois Department of Revenue agent, who purchased more than 300 packs of cigarettes from Hemi-operated websites in 2005 and 2007. *Id.* at 755. Despite the fact that Hemi was "not registered to do business in Illinois, [did] not have any offices or employees in Illinois, [did] not bank in Illinois, ... [had] not advertised in print media in Illinois," and did not "single out Illinois residents on any of its websites," the Seventh Circuit affirmed the district court's exercise of specific jurisdiction over Hemi. *Id.* at 756–58. The Seventh Circuit based its decision on how Hemi conducted its internet-based business.

Hemi created several commercial, interactive websites through which customers could purchase cigarettes from Hemi. Hemi held itself out as open to do business with every state (including Illinois) except New York. After the customers made their purchases online, Hemi shipped the cigarettes to their various destinations. It is Hemi reaching out to residents of Illinois, and not the residents reaching back, that creates the sufficient minimum contacts with Illinois

that justify exercising personal jurisdiction over Hemi in Illinois.

*Id.* at 758. Thus, where an internet company holds itself out as open to do business with a forum state and actually does sell products to residents of the forum, specific jurisdiction is proper. *Payton v. Kale Realty, LLC,* Case No. 13 C 8002, 2014 WL 4214917, at *3, 2014 U.S. Dist. LEXIS 118590, at *8 (N.D.Ill. Aug. 26, 2014) (citation omitted).

■ Like the defendant in *Hemi Group,* Factory Direct operates internet retail stores for the promotion and sale of its "BestChair" products on interactive websites like Amazon.com and eBay.com. Factory Direct holds itself out as open to do business with every state, except Hawaii and Alaska, and directly ships the items sold from various internet websites to customers in Indiana. "Factory Direct was therefore "ready and willing" to do business with [Indiana] residents," and reached into Indiana by directly selling its "BestChair" items to Indiana customers. *Hemi Group,* 622 F.3d at 758.

Notwithstanding its sales to Indiana residents, Factory Direct contends these sales were so minimal as to counsel against a finding of purposeful-directed activity. Contrary to Factory Direct's assertion, the actual number of sales to the forum state is not determinative. For example, in *Hemi Group,* the Seventh Circuit found specific personal jurisdiction even though the defendant sold approximately 300 packs of cigarettes over a two-year period. *Id.* at 755, 758. And in *Valtech, LLC v. 18th Ave. Toys, Ltd.,* the district court found specific personal jurisdiction even though the defendants/accused infringers' internet sales to the forum state were "very minimal in comparison to overall sales." No. 14 C 134, 2015 WL 603854, at *4, 2015 U.S. Dist. LEXIS 17138, at *11 (N.D.Ill. Feb. 12, 2015). The district court

reasoned that defendants "sold (and sometimes shipped) their infringing products to Illinois residents with the knowledge that Valtech would be injured in Illinois, satisfying the factors outlined in *Calder.*" *Id.* (citing *Tamburo,* 601 F.3d at 703). Thus, although the defendants' sales to Illinois were *de minimus,* "these sales to Illinois still occurred, each resulting in an intentional tort." *Id.* This reasoning applies with equal force here.

### b. Knowledge of Injury

■ On a related note, Factory Direct also argues that it had no knowledge that Best Chairs would suffer injury in Indiana. The designated evidence belies that assertion. First, Best Chairs filed a trademark complaint with Amazon.com against Cavalier Wholesale in 2012. As Cavalier Wholesale and Factory Direct are intimately related entities, one may infer that notice to Cavalier Wholesale was also notice to Factory Direct. Second, Best Chairs sent Factory Direct a cease and desist letter in January 2014 after it received a complaint from the Better Business Bureau regarding a Factory Direct product. Soon thereafter, Factory Direct filed a trademark application with the USPTO for the "BestChair" and "BestOffice" marks. The court finds this evidence is sufficient to establish knowledge.

### 2. Additional Requirements

■ In addition to the purposeful-direction requirement, a party asserting specific personal jurisdiction over a nonresident defendant must show that the alleged injury arises out of the defendant's contact with the forum state. *N. Grain Mktg.,* 743 F.3d at 492. Citing *Family Watchdog, Inc. v. Schweiss,* Factory Direct contends Best Chairs cannot satisfy this requirement because Best Chairs does not have sufficient evidence of consumer confusion. 1:08–cv–642–SEB–DML, 2009 WL 276856, 2009 U.S. Dist. LEXIS 8644 (S.D.Ind. Feb. 5, 2009).

The facts of *Family Watchdog* are readily distinguishable from the present case. There, the non-resident individual defendant (Schweiss) operated a passive website entitled "familywatchdog.us," owned a number of domain names strikingly similar to the plaintiff's (for example, "familywatchdog.com"), sent three emails offering to sell his domain names to the plaintiff, and made no sales to Indiana residents. *Id.* at *1–2, 2009 U.S. Dist. LEXIS 8644 at **4–6. Plaintiff argued that customer confusion evinced the "intentional targeting" necessary to satisfy the "effects" test. *Id.* at *6, 2009 U.S. Dist. LEXIS 8644 at *22. The court rejected that argument, stating that "mere customer confusion is not enough; to rise to the level of 'targeting,' the customer confusion in a particular forum must somehow bear the defendant's fingerprints." *Id.* at *6, 2009 U.S. Dist. LEXIS 8644 at *24.

Unlike *Family Watchdog,* customer confusion does not form the basis of Factory Direct's contacts with Indiana; rather, its contacts with Indiana revolve around its allegedly infringing sales of "BestChair" products to Indiana residents. But in any event, Best Chairs has provided evidence of consumer confusion. This is exemplified by the designated evidence of email communications between Amazon.com consumers, Amazon.com representatives, and Best Chairs' own sales representative. Accordingly, Best Chairs' claims arise out of Factory Direct's allegedly infringing sales of "Best Chair" products to Indiana residents. (Am.Compl. ¶ 17).

■ Lastly, a party asserting specific personal jurisdiction must also show that exercising jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. *See Int'l*

*Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154. Factors to consider include:

> (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Felland,* 682 F.3d at 677 (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174).

The court finds that exercising jurisdiction over Factory Direct in Indiana is fair. Factory Direct set up an expansive internet presence for the purpose of selling its "BestChair" products to consumers in 48 states, including Indiana. While Factory Direct may be burdened by litigation in Indiana, Indiana has a strong interest in providing Indiana businesses like Best Chairs with a forum in which to seek relief.

Best Chairs has satisfied its burden of establishing a *prima facie* case of personal jurisdiction over Factory Direct. Consequently, Factory Direct's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2) is **DENIED.**

**B. Specific Jurisdiction over Eastern Enterprises, Pay Less Here, and Liu**

The court now turns to whether it has specific personal jurisdiction over the Newly–Added Defendants, Eastern Enterprises, Pay Less Here, and Liu, under a conspiracy theory. "The 'conspiracy theory' of personal jurisdiction is based on the 'time honored notion that the acts of [a] conspirator in furtherance of a conspiracy may be attributed to the other members of the conspiracy.'" *Textor v. Bd. of Regents of N. Ill. Univ.,* 711 F.2d 1387, 1392 (7th Cir.1983) (quoting *Gemini Enterprises, Inc. v. WFMY Television Corp.,* 470 F.Supp. 559, 564 (M.D.N.C.1979)). To successfully plead a specific personal jurisdiction under a conspiracy theory, "a plaintiff must allege both an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in the forum state." *Id.* at 1392–93 (citing *Gemini Enterprises,* 470 F.Supp. at 564).

Under Indiana law, a civil conspiracy "is a combination of two or more persons, by concerted action, to accomplish an unlawful purpose or to accomplish some purpose, not itself unlawful, by unlawful means." *Indianapolis Horse Patrol, Inc. v. Ward,* 247 Ind. 519, 217 N.E.2d 626, 628 (1966). While Indiana does not recognize a cause of action for "civil conspiracy," the state recognizes an action for damages resulting from a conspiracy. *Huntington Mortg. Co. v. DeBrota,* 703 N.E.2d 160, 168 (Ind.Ct.App.1998). Essentially, this is an alternative way of asserting concerted action in the commission of a tort. *Boyle v. Anderson Fire Fighters Ass'n,* 497 N.E.2d 1073, 1079 (Ind.Ct.App.1986). The torts at issue here are trademark infringement, contributory infringement, unfair competition, civil conspiracy, and other related claims.

The proposed Amended Complaint alleges the court has personal jurisdiction over Factory Direct and Eastern Enterprises due to their contacts with the State of Indiana—i.e., they solicit, sell, and continue to sell products in Indiana that allegedly violate Best Chairs' BEST Trademarks. (Am.Compl. ¶ 17). In addition, the proposed Amended Complaint alleges the court has personal jurisdiction over Liu because he directs and controls Eastern Enterprises and Pay Less Here. (*Id.* ¶ 18). Lastly, the proposed Amended Complaint alleges the court has personal jurisdiction

over all of the Defendants because they engaged in a conspiracy to sell BEST-CHAIR, BEST CHAIR, and BESTOFFICE lines of chairs and other furniture products in the State of Indiana through various online retailers. (*Id.* ¶ 19).

In addition, Count VI of the Amended Complaint for civil conspiracy alleges that the Defendants conspired together to penetrate the market of "BestChair" furniture products with a confusingly similar name to Best Chairs' line of furniture products, and deliberately engaged in a campaign to advertise, market, and sell "BestChair" products on Amazon.com, eBay.com, and the like, to "further flood the market with confusingly similar products, all to the detriment of Best Chairs." (*Id.* ¶¶ 134–35). The evidence also shows that Liu is the sole owner and CEO of Factory Direct, Eastern Enterprises, and Pay Less Here; Liu runs each of these businesses under the same roof with the same employees; each company sells and advertises "Best-Chair" and "BestOffice" products over the internet; and all sales by Eastern Enterprises and Pay Less Here are funneled to Factory Direct for fulfillment and shipment to the consumer. Moreover, the data produced by Factory Direct for Indiana sales of "BestChair" products, designated as Filing No. 95–3, does not break down the sales by company, leading one to infer that Factory Direct was unable to produce a breakdown of sales by company. The court finds the allegations of the Amended Complaint and the evidence produced to date are sufficient for the court to exercise specific personal jurisdiction over Eastern Enterprises, Pay Less Here, and Liu under a conspiracy theory. Consequently, the Motion to Dismiss filed by Eastern Enterprises, Pay Less Here, and Liu under Federal Rule of Civil Procedure 12(b)(2) is **DENIED.**

## IV. Motion to Dismiss for Failure to State a Claim

Next, Defendants move to dismiss the Amended Complaint on grounds that the "Best Chairs" mark is generic and thus not entitled to trademark protection. " 'A generic term is one that is commonly used as a name of a kind of goods.' " *H–D Mich., Inc. v. Top Quality Serv., Inc.,* 496 F.3d 755, 759 (7th Cir.2007) (quoting *Liquid Controls Corp. v. Liquid Control Corp.,* 802 F.2d 934, 936 (7th Cir.1986)). By contrast, a descriptive term "is one that names a characteristic of a particular product or service." *Id.* (citing J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:16 (4th ed.2007)). Generic and descriptive marks do not typically warrant trademark protection; however, a descriptive mark may warrant trademark protection if it has acquired secondary meaning. *Id.* (citing *Custom Vehicles, Inc. v. Forest River, Inc.,* 476 F.3d 481, 483 (7th Cir.2007)). A descriptive mark acquires secondary meaning if "the product name comes 'to be uniquely associated with the original seller.' " *Id.* (quoting *Custom Vehicles,* 476 F.3d at 483); *see also Jay Franco & Sons, Inc. v. Franek,* 615 F.3d 855, 857 (7th Cir.2010) (describing "secondary meaning" as "a link in the minds of consumers between the marked item and its source").

In support of their argument that Best Chairs' marks are generic, Defendants rely upon cases from the Trademark Trial and Appeal Board that denied trademark protection to marks including the term BEST. *See In re Nett Designs, Inc.,* 236 F.3d 1339, 57 USPQ2d 1564 (Fed.Cir.2001) (THE ULTIMATE BIKE RACK unprotectable); *In re Best Software Inc.,* 58 U.S.P.Q.2d 1314 (TTAB 2001) (BEST and PREMIER in mark BEST! SUPPORT-PLUS PREMIER merely descriptive); *Gen. Foods Corp. v. Ralston Purina Co.,*

220 U.S.P.Q. 990 (TTAB 1984) (ORIGINAL BLEND merely descriptive of cat food). The procedural posture of this case is distinguishable from the cases cited above in that the marks at issue here were registered by the USPTO more than five years ago and have thus become incontestable. "With respect to incontestable marks, [15 U.S.C. § 1115(b)] provides that registration is *conclusive* evidence of the registrant's exclusive right to use the mark," subject to certain defenses not at issue here. *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 196, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985) (emphasis in original). Defendants reliance on *Best Buy Warehouse v. Best Buy Co., Inc.*, 920 F.2d 536 (8th Cir. 1991), which affirmed the district court's finding that the term BEST BUY was generic, likewise does not convince the court that the term BEST CHAIRS is generic. Indeed, since the *Best Buy* decision was published in 1991, the USPTO has granted 11 federal registrations for BEST BUY marks, including a registration for the words BEST BUY with no other words, designs, or stylations. (Filing No. 94–24, List of Federal Registrations for BEST BUY). Were the term BEST BUY generic, the USPTO would not have registered those marks. Accordingly, Factory Direct's and the Newly–Added Defendants' Motions to Dismiss are **DENIED** on this ground.

## V. Laches

 Lastly, Defendants contend Best Chairs' trademark claims are barred under the applicable statute of limitations because Best Chairs allegedly failed to file this lawsuit within two years of Best Chairs' discovery of the infringement by Cavalier Wholesale in 2012. Defendants are incorrect. The Lanham Act does not contain a statute of limitations; instead, the court looks to "analogous state statutes of limitations to determine whether a pre-

sumption of laches should apply." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir.1999); *see also* 15 U.S.C. § 1115(b)(9). The doctrine of laches applies if the defendant shows that: (1) the plaintiff had knowledge of the defendant's use of an allegedly infringing mark; (2) the plaintiff inexcusably delayed in taking action with respect to the defendant's use; and (3) the defendant relied to its detriment on, and was prejudiced by, the delay. *Chattanoga Mfg., Inc. v. Nike, Inc.*, 301 F.3d 789, 792–93 (7th Cir.2002).

 With respect to the first element, a plaintiff is chargeable with knowledge if the plaintiff has actual or constructive notice of the defendant's infringing activities. *Id.* at 793. A plaintiff has "constructive notice" when it could have discovered the relevant information " 'had due inquiry been made.' " *Id.* (quoting *Safeway Stores, Inc. v. Safeway Quality Foods, Inc.*, 433 F.2d 99, 103–04 (7th Cir.1970)).

 The evidence reflects that, in 2012, Best Chairs was notified that a "BestChair" chair was being sold on Amazon.com in 2012. As part of its investigation into the matter, Best Chairs ordered a "BestChair" office chair from Cavalier Wholesale, and noted that neither the chair nor the packaging were labeled with or otherwise used the term "BestChair." The shipping label identified the seller as Cavalier Wholesale. There was no mention of Factory Direct on the packaging or shipping label. After Best Chairs filed a trademark complaint with Amazon.com in April 2012, Amazon.com discontinued sales of "BestChair" chairs. Best Chairs thought the matter had been resolved.

In January 2014, Best Chairs received notification from the Better Business Bureau of a complaint filed against Best Chairs/Best Home Furnishings by a consumer claiming he purchased a defective

chair on Rakuten.com from Best Chairs. Best Chairs investigated the matter, and discovered that Factory Direct was using the "BestChair" mark to identify itself. Best Chairs also learned that "BestChair" products were being sold on Amazon.com by Factory Direct. Best Chairs discovered that Factory Direct was using "Best-Chair" in its online listing with Amazon.com, but it was also using the term on product packaging shipped to the purchaser. Best Chairs maintains that there was no indication in any of the packaging or shipping documents that Factory Direct was affiliated with Cavalier Wholesale. It was only through discovery taken after this lawsuit was filed that Best Chairs became aware of their related status. There is therefore no evidence of record to show that Best Chairs had actual or constructive notice that Factory Direct was using the "BestChair" mark in 2012 or at any time prior to January 2014. But even if it had such notice in 2012, "[a] two year delay in filing an action following knowledge of the infringement has rarely been held sufficient to constitute laches." *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 942 (7th Cir.1989) (citing *Piper Aircraft Corp. v. Wag–Aero, Inc.*, 741 F.2d 925, 933 (7th Cir.1984)).

With respect to the second element, the court finds that Best Chairs did not unreasonably delay in filing suit. It became aware of Factory Direct's allegedly infringing use of the "BestChairs" mark in January 2014, and filed suit four months later in May 2014.

Lastly, with respect to the third element, the court finds Factory Direct did not rely to its detriment on Best Chairs' failure to file suit sooner. Best Chairs filed a trademark complaint with Amazon.com in 2012 against Cavalier Wholesale for its use of the designation "Best-Chairs." Since Cavalier Wholesale and Factory Direct are owned by the same person and share the same business address, one may reasonably infer that Factory Direct received timely notice of this complaint from Amazon.com. Thus, it cannot claim that Best Chairs' inaction lulled Factory Direct into a false sense of security that its use of the "BestChairs" mark was lawful. But even if it did not receive such notice until the cease and desist letter in January 2014, this would only go to show that Factory Direct and its other related entities were not prejudiced by Best Chairs' delay. *See Chattanoga Mfg.*, 301 F.3d at 795 (prejudice "ensues when a defendant has changed its position in a way that would not have occurred if the plaintiff had not delayed"). Accordingly, the court finds Defendants are not entitled to the defense of laches.

## VI. Conclusion

The court finds that exercising specific personal jurisdiction over Factory Direct and the Newly–Added Defendants is consistent with due process and does not offend traditional notions of fair play and substantial justice. The court further finds that Best Chairs' trademarks are not generic, and that Best Chairs did not unreasonably delay in filing this lawsuit. Accordingly, Factory Direct's Motion to Dismiss (Filing No. 82) is **DENIED,** the Newly–Added Defendants' Motion to Dismiss (Filing No. 108) is **DENIED,** and the Defendants' Motion for Hearing (Filing No. 121) is **DENIED.**